## 27006. JOHNSON v. CALDWELL.

Submitted February 14, 1972—Decided March 9, 1972.

*C. B. King, Elliott H. Holden,* for appellant.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, W. Hensell Harris, Jr., Assistant Attorneys General,* for appellee.

Grice, Justice. This review is occasioned by the denial of a petition seeking the writ of habeas corpus. The petitioner Johnny B. Johnson filed in the Superior Court of Tattnall County his petition against the respondent E. R. Caldwell, Warden of the Georgia State Prison, asserting that his de-

tention was illegal for specified reasons. The petitioner had been indicted by the grand jury of Worth County for the murder of a police officer and had been tried, found guilty without a recommendation of mercy, and sentenced to death by the superior court of that county. He filed a motion for new trial asserting the general grounds and the claim that the death penalty was forbidden by the Federal and State Constitutions. This court in *Johnson v. State*, 226 Ga. 378 (174 SE2d 902) affirmed the denial of the motion.

In his appeal from the denial of habeas corpus relief the petitioner relies upon six enumerations of error.

1. First, petitioner contends that he was deprived of the effective assistance of counsel.

As to this he urges, in substance, the following: that his court-appointed counsel failed to interview key witnesses so as to ascertain the essential facts of the homicide; that his counsel did not devote sufficient time conferring with him prior to trial; that counsel neglected to discuss with him the possible defenses; that counsel did not sit with him during the trial; that counsel omitted to introduce evidence as to lack of criminal intent; that counsel failed to advise him about making his unsworn statement to the jury; that counsel should not have waived a commitment hearing; and that his counsel was disloyal to him. From the foregoing, petitioner contends that his trial counsel did not render effective representation.

In response to this claim petitioner's trial counsel testified at length, denying much of the testimony of the petitioner and recounting various decisions made and steps taken in representing him. Counsel, in effect, sought to demonstrate that he provided the best representation possible under the adverse circumstances that then existed. He insisted that he was familiar with the essential facts, which were relatively simple, and that he sought to employ them to the best advantage under the rules of law.

From a careful examination of the evidence, we conclude that the habeas corpus court was amply authorized to find that petitioner had failed to carry the burden in connection

with this claim and that it was therefore without merit.

What was said by this court in *Estes v. Perkins*, 225 Ga. 268 (1) (167 SE2d 588), applies here: "While another lawyer or other lawyers, had they represented the petitioner upon her trial, might have conducted her defense in a different manner, and might have exercised different judgments with respect to the matters referred to in her petition, the fact that her attorneys chose to try the petitioner's case in the manner in which it was tried and made certain decisions as to the conduct of her defense with which she and her presently employed attorneys now disagree, does not require a finding that their representation of the petitioner was so inadequate as to amount to a denial to her of the effective assistance of counsel."

What occurred here in this respect does not even approach the criterion of whether the representation amounted to a sham or mockery of justice. At most, the evidence shows that the claim here is mere hindsight.

2. Petitioner also maintains that the habeas corpus court erred by not finding that at his trial the State failed to meet its burden of establishing affirmatively that he waived his rights against self-incrimination before he made the confession which was admitted into evidence against him. As to this he swore that the requirements of Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974), were not fulfilled in that the necessary warnings were not given. However, there was testimony to the contrary at the habeas corpus hearing. The record shows also that a hearing was conducted in compliance with Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908, 1 ALR3d 1205), as to the voluntariness of the confession and that the trial court found that the requirements of both Miranda and Jackson were met and the statement was admissible.

Accordingly, this contention is not meritorious.

3. Petitioner further asserts that the habeas corpus court erred by failing to find that his sentence was in violation of the equal protection and due process clauses of the Four-

teenth Amendment to the United States Constitution because, pursuant to the law of the State of Georgia, persons with conscientious scruples against the imposition of the death penalty were excluded for cause from service on the jury which convicted him.

In support of this enumeration petitioner relies upon Witherspoon v. Illinois, 391 U. S. 510, 522 (88 SC 1770, 20 LE2d 776), which held in essential part, "that a sentence of death can not be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty. . ."

However, this claim is deficient as to facts to support it. Neither the petitioner nor anyone else, in recounting what occurred, testified that any juror was excluded solely because he was opposed to capital punishment.

It necessarily follows that the petitioner failed to carry the burden of his contention as to any impropriety in the jury selection process insofar as capital punishment is concerned.

This conclusion renders unnecessary a consideration of the further contention that the evidence shows that the voir dire examination was made by panels, instead of individually, and that this method is improper.

4. Petitioner takes the position that the trial court erred because it failed to charge the jury on the law as to involuntary and voluntary manslaughter.

This is not valid for two reasons.

First, the principles of involuntary manslaughter and voluntary manslaughter were not involved in the evidence. The judge charged upon murder, justifiable homicide and accident, which covered every phase of the homicide germane to the jury's consideration.

Second, this complaint cannot be raised in a habeas corpus proceeding. This writ cannot be used as a substitute for appeal for the correction of errors and irregularities in a criminal case. Nor can it be used as a second appeal. *Ferguson v. Balkcom,* 222 Ga. 676 (151 SE2d 707). In this

connection it should be noted that this contention was not raised in the appeal previously made to this court in *Johnson v. State*, 226 Ga. 378, supra.

5. Another enumeration urges that imposition of the death penalty upon the petitioner under the statutory scheme existing in Georgia at the time of his conviction and sentence was unconstitutional because it made the risk of death the price for asserting the right to trial by jury.

The basis for this claim is that *Code Ann.* § 27-2528 (Ga. L. 1956, p. 737), in effect in 1968 when this trial took place, affords a person charged with a capital felony the right to plead guilty and thus automatically receive a life sentence, while a person who exercises his right to a jury trial must take the risk of a death sentence.

This contention rests upon a faulty premise. This court has held that *Code Ann.* § 27-2528 cannot be construed to mean that "upon the defendant in a capital felony case entering a plea of guilty, the trial judge *must* sentence him to life imprisonment or a lesser punishment. He is merely authorized, in the exercise of his discretion, but is not required by the provision of the Act of 1956, supra, to impose such sentence." (Emphasis supplied.) *Massey v. State*, 220 Ga. 883, 889 (142 SE2d 832).

Therefore, the petitioner had the choice of entering a plea of guilty for which he could receive a death sentence; or of entering a plea of not guilty for trial by a jury for which he could receive a death sentence. Thus there was no election based upon unconstitutional coercion as contended here.

6. Lastly, petitioner urges that he, a black man, was denied equal protection and due process of law because he was indicted by a grand jury and tried by a traverse jury which were drawn from a jury list that was unconstitutionally composed because it did not represent a fair cross-section of the community, in that Negroes were not adequately represented thereon, contrary to *Code Ann.* § 59-106 et seq.

In this connection, petitioner asserts that the high per-

centage of Negroes in the population of Worth County and the low percentage of Negroes on the jury list establishes a prima facie case of discrimination against Negroes; and that the State has failed to meet its burden of rebutting this, thus rendering void his conviction and sentence. For support he relies upon several decisions of the Supreme Court of the United States, including Whitus v. Georgia, 385 U. S. 545 (87 SC 643, 17 LE2d 599).

The facts involved here do not sustain this claim.

In the Whitus decision two things were shown to make out a prima facie case of discrimination: (1) an infected source of jurors such as racially segregated tax returns; and (2) an impermissible disparity between the venire and the source of jurors.

As to the first, there was no infected source of jurors here, which distinguishes this case from those involving the use of racially segregated tax returns. As shown by the evidence, the primary source of jurors was the registered voters' list, which is sanctioned by Code Ann. § 59-106 (Ga. L. 1968, p. 533). That section is not void for vagueness, as contended, in its mandate to "select a fairly representative cross-section of the intelligent and upright citizens of the county from the official registered voters' list which was used in the last preceding general election."

Secondly, the statistics presented by the testimony failed to establish a prima facie case of discrimination against Negroes, so as to shift the burden of showing a lack of discrimination to the State under the ruling in Norris v. Alabama, 294 U. S. 587 (55 SC 579, 79 LE 1074).

In the Norris case it was shown that no Negroes had served on juries for many years when a certain percentage of the eligible population was Negro.

Here, however, the only significant facts shown by the record are the following. Each of the Worth County Jury Commissioners testified that the registered voters' digest was primarily utilized as a source for potential jurors. Two of them estimated that in 1969, the year involved here, approximately 21% to 28% of those persons on the jury list were

Negroes. Statistics were also presented to show that according to the 1960 United States census, 48% of the *total* population of Worth County was Negro.

This evidence in no way tends to show what percentage of the Negro population of Worth County was *eligible* to serve on juries *in 1969.* Nor was it shown that Negroes had been totally or arbitrarily excluded from jury service in past years. Furthermore, there was no evidence to show the percentage of Negroes on the 1969 registered voters' list (which, indeed, does not indicate race). Therefore, under these facts, the appellant failed to establish an impermissible disparity between the venire and the source of jurors.

Finally, from an examination of this record, we find no evidence of discrimination in the selection of jurors. Each of the members of the jury commission, including the Negro member, actively participated in this selection. They testified that there was no discrimination against any person or any class and that they made no effort to arrive at any particular percentage of representation of any racial group. Much of what was stated in *Sullivan v. State,* 225 Ga. 301, 303 (168 SE2d 133), applies here.

Since the record shows no merit in any of the enumerations of error the habeas corpus court was correct in denying the writ and in remanding the petitioner to the custody of the respondent warden.

*Judgment affirmed. All the Justices concur.*