for appellee.

## 28678. HOUSE y. THE STATE.

UNDERCOFLER, Justice.

This case is before this court on appeal and mandatory review of the death sentences imposed. The appellant was charged with two counts of murder occurring on April 14, 1973; indictments were returned against him on April 27, 1973; his trial began on July 9, 1973; and sentences were imposed on July 12, 1973.

The state presented evidence to establish the following: In the early afternoon of Saturday, April 14, 1973, a man wearing a dark hat was observed sitting on a log in the upper parking lot of the Mi Casa Apartments which are located in the area of DeFoor Avenue and Collier Road in Northwest Atlanta, Georgia. A few minutes later the man stood up, appeared to be staggering, and leaned against a wall surrounding a large tree in the parking lot. Thereafter the man walked out of the parking lot towards DeFoor Avenue about 2:15 to 2:30 p.m. About 2:30 a man identified as Jack Carlton House, the appellant, staggered down Clairmont Street in front of the home of Robert Eugene Dunn, one of the victims. Robert and a friend, Johnny Ray Smith (each aged seven) ran out as if to play with the appellant and Robert's father made them come back. Appellant went on down the street and about five minutes later the two boys got on their bicycles and went down the street and out of sight in the same direction as appellant had gone. About 3:00 p.m. a man wearing a dark hat, resembling appellant's hat, was seen at the corner of Mantissa Avenue and DeFoor Avenue going into the woods. The Dunn boy and another boy who were pushing their bikes across the street laid their bikes down and went in the same direction the man was seen to go. All three disappeared into the woods.

In a pre-trial statement, the appellant related the boys followed him in the woods. ". . . I had with me a coke

bottle which I had poured what was left from the half-pint that I had bought. I then sat down and finished what I had in the coke bottle. At this time the boys had followed me down into the woods and they were still picking at me. I told them to go on and leave me alone but they wouldn't. So I reach up and grabbed one of them by the neck and got up and grabbed the other (I'm not sure how I grabbed him). They were hollering and screaming. I told them to quit hollering and made them take their clothes off." After relating that he committed anal sodomy on both of the boys the appellant continued, "and they kept hollering. Then I choked them to death. Then I took the bodies up to the railroad tracks by carrying one on each shoulder like a sack of flour. After getting up close to the railroad tracks I threw the bodies down, and I ran out of the woods by the dump and out Davis Circle. . . I was wearing green pants and a blue shirt with white stripes and a black felt hat with a gold band around it."

Between 3:40 p.m. and 4:00 p.m. that day a man wearing a black hat resembling appellant's was observed walking in an unsteady manner up Davis Place.

The nude bodies of Robert Eugene Dunn and Johnny Ray Smith were found in the early morning hours of Sunday, April 15, 1973, in the woods they were seen to enter the previous day. Their clothing was found some four hundred feet from the bodies.

The following day the appellant showed police officers where he did the act, where he put the clothes and where he dumped the bodies.

A bloodstain on appellant's trousers was International Group A-M-N, Blood Group M. Appellant's blood was Group N and Robert Dunn's blood group was M.

Examination of the bodies of the two boys indicated they died of strangulation. Further physical findings corroborated appellant's pre-trial statement.

The appellant presented evidence to establish the following: In the woods where the bodies were found drunks hang out especially on week-ends. Appellant drinks a lot. He talks a lot when drunk but otherwise he is no different when drunk. On the morning of Saturday, April 14, 1973, appellant had intercourse with his wife

who was bleeding from her menstrual period. Appellant kept his pants on during intercourse. He is not sexually abnormal and when he gets drunk he comes in and goes to sleep. He was at home when his wife left to go shopping at 1:30 p.m. and when she came back at 4:00 p.m. he was in bed asleep.

Appellant testified that on the Saturday morning he went shopping with his wife and bought a hat. They returned home and later his wife left. Appellant related buying and drinking two half-pints of vodka and his wandering about the neighborhood. He wandered by two kids who asked if he was drunk and he responded "Yep." He wandered on and later saw two little boys on bicycles down the hill. He wandered down the path into the woods, rolled into some leaves, heard somebody talking but paid no attention, and "passed out." He testified that he had no knowledge of what happened to anyone in the woods. When he came out of the woods he saw the two bicycles. He went home. He identified the hat and pants that were in court as the ones he was wearing that day.

The appellant's brother, Brintley House, testified that about 2:30 p.m. that Saturday, appellant had tried to sell him a tape recorder, that the appellant was drunk, and that the appellant was not a homosexual.

Testimony concerning the voluntariness of the pre-trial statement of appellant will be discussed below.

Following his conviction and sentences to death on each of the charges of murder, House appeals to this court alleging in addition to the general grounds that the trial court erred as follows: (a) The waiver of counsel signed by appellant prior to his interrogation by the Atlanta Police Department was illegal and void and it was error to put it into evidence or to allow the jury to consider it. (b) The confession taken by the Atlanta Police Department from the defendant was procured illegally and should not have been admitted into evidence. (c) The statute under which the death penalty was imposed upon the defendant was and is unconstitutional under the United States and Georgia Constitutions. *Held:*

1. The waiver of counsel signed by appellant prior to his interrogation by the Atlanta Police Department was not illegal and void and it was not error to put it into

evidence or to allow the jury to consider it.

Appellant contends that the waiver of rights which he signed prior to the instigation of interrogation by the Atlanta Police Department on April 15, 1973, was not intelligently and knowingly made and that the burden of showing the voluntariness of the waiver rests upon the state and that a necessary ingredient of that voluntariness is knowledge of the nature of the offense about which appellant was being questioned.

Detective Charles Smegal of the Atlanta Police Department testified on cross examination that he told appellant "that he was suspected of the offense of murder" prior to his signing the waiver but that he did not tell him he could go to the electric chair for it.

Appellant testified: "Sergeant Fitzgerald stood up. So, he said, 'Well, I will tell you what happened down there, there was two little boys killed and raped in those woods' . . . Sergeant Fitzgerald was standing up and he set me in a chair. Well, Sergeant Fitzgerald got to talking to me and it was 12:10 whenever I signed that first paper, . . ."

Other evidence clearly indicates that the statement of rights in appellant's waiver was read to him and read by him and that he voluntarily signed the waiver after indicating he understood those rights without threats, offer or hope of reward or offer of physical violence.

Both the state's witness and the appellant confirmed that appellant was informed of the nature of the offenses of which he was suspected and to be interrogated. We conclude that appellant was fully advised of the nature of the offense about which he was to be questioned and intelligently and knowingly waived his right to the benefit of counsel prior to being interrogated. *Pitts v. State,* 226 Ga. 878 (178 SE2d 177); *Johnson v. Caldwell,* 228 Ga. 776, 778 (187 SE2d 844).

2. The confession taken by the Atlanta Police Department from the defendant was procured legally and was properly admitted into evidence.

At a hearing without the jury held in accord with Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908, 1 ALR3d 1205), and subsequently before the jury, the following evidence was presented concerning the

voluntariness of appellant's confession. For the state there was testimony that on April 15, 1973, prior to any interrogation the appellant was advised in accord with the requirements of Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974) that he was suspected of murder, that he had a right to remain silent, that anything he said could be used against him in court, that he had a right to talk to a lawyer for advice before questioning and to have a lawyer with him during questioning, that if he could not afford a lawyer one would be appointed for him before any questioning and if he decided to answer questions without a lawyer he would still have the right to stop answering at any time until he talked to a lawyer. There was also testimony that appellant was not subjected to any threats, force, coercion or promise of reward and that he made the statement freely and voluntarily. For the defense appellant testified that he was slapped and hit by the police officers, "kicked in the straddle" 13 or 14 times, threatened, and slapped against a wall six times over a three and one-half hour period. He testified that he screamed during the beating. Appellant's attorney testified appellant showed him bruises on his legs all the way up to the crotch after being confined in the county jail.

The appellant was taken into custody about noon April 15, 1973, and questioned during that afternoon in the homicide squad room located on the third floor of the Atlanta Police Office Building. The third floor was described as being divided into two sections, one for crimes against persons and property and one for victimless crimes. Officers and detectives assigned to various activities came and left during the afternoon. In addition there were three or four female secretaries present in the section assigned for crimes against persons and property. It was stated that any screams would be heard throughout the entire third floor. The appellant's brother, who had accompanied him to the Police Building was sitting in the burglary office with the door open. The burglary office is next to the homicide office. There was no evidence that anyone heard screams. The brother testified he heard none. The appellant was described as cooperative. He was not handcuffed. As one officer stated,

"The situation did not warrant it." The officers specifically denied striking the appellant. One stated, "I wouldn't place the case in jeopardy by touching that man [appellant]." The appellant dictated his statement to one of the secretaries who transcribed it. After signing it the appellant accompanied the officers to the scene of the crime where he pointed out the place of the criminal activities. Several days later the appellant was transferred to the Fulton County jail to await trial. The medical assistant testified that thereafter he saw appellant "just about everyday" but he never made any complaint about his health except sometime in May when he stated he had a headache.

The trial judge admitted the confession into evidence and submitted the issue of voluntariness to the jury under appropriate instructions.

The trial court was authorized to determine that the signed confession was freely and voluntarily given. This complied with the requirements of Jackson v. Denno, 378 U. S. 368, supra. Therefore the court properly permitted introduction in evidence of the statement and the facts surrounding it for the jury's consideration. *Wilson v. State,* 229 Ga. 395 (191 SE2d 783); *Callahan v. State,* 229 Ga. 737 (4) (194 SE2d 431).

3. The statute under which the death penalty was imposed upon the defendant was and is constitutional under the United States and Georgia Constitutions.

The constitutionality of Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2534.1 et seq.) pursuant to which the death penalty was imposed upon appellant was decided in *Coley v. State,* 231 Ga. 829. The statute was held to be constitutional. The constitutionality of the application of the death penalty to Jack Carlton House, the appellant in the instant case, has been determined upon review of the sentence by this court pursuant to the above statute.

4. Appellant also enumerates the general grounds. From our review we conclude that the verdict is not contrary to the evidence, there is ample evidence to support the verdict, and it is not against the weight of the evidence. The verdict is not contrary to law and the principles of justice and equity.

5. Although not enumerated as error we have

reviewed the necessity for jury instructions on circumstantial evidence.

At the conclusion of the trial judge's charge to the jury, appellant's counsel stated to the court:". . . this would necessarily be based on circumstantial evidence except for the confession — if the jury sees fit to throw the confession out it would have to be based on circumstantial evidence, and I believe a charge on circumstantial evidence would be appropriate at this time."

The court responded, "Well, you have told the jury about circumstantial evidence. It wasn't requested and I decided that — I did not include it, taking the case as a whole. It hurts you as badly as it helps you if you charge it. I would have to say it was not applicable if they found that there was direct evidence and therefore I saw no reason to charge it. I tried to eliminate from the charge every element I could. For instance, I could have charged on any number of other things, but I felt like the best charge would be the simple charge and I will let it go that way in view of the absence of a request. I believe it is a proper charge."

The law is well settled in Georgia that where the state did not rely on circumstantial evidence alone, there being direct evidence, a court does not err in failing to charge that, before conviction could be had upon circumstantial evidence alone, proven facts must not only be consistent with the hypothesis of guilt but must exclude any other reasonable theory or hypothesis save guilt of the accused.

In the case sub judice the confession, the deceased bodies and the appellant's action in pointing out various locations at the site of the crime were all direct evidence.

Accordingly, in the absence of a timely request, it was not error for the court to fail to charge on circumstantial evidence as provided in Code § 38-109. *Bowen v. State,* 181 Ga. 427, 429 (182 SE 510); *Harris v. State,* 207 Ga. 287 (2) (61 SE2d 135); *Gentry v. State,* 208 Ga. 370 (2) (66 SE2d 913); *McGruder v. State,* 213 Ga. 259 (4) (98 SE2d 564); *Ledford v. State,* 215 Ga. 799 (10) (113 SE2d 628); *Fields v. State,* 221 Ga. 307 (3) (144 SE2d 339); *Walker v. State,* 226 Ga. 292 (11) (174 SE2d 440); *Bryant*

*v. State,* 229 Ga. 60 (1) (189 SE2d 435). Appellant's counsel in a supplementary brief concedes this conclusion is correct under Georgia law.

6. On our own motion we have reviewed this case thoroughly and minutely. We find no errors which have not been raised by appellant's counsel and passed upon here. In our opinion the case was fairly tried.

7. Sentence Review. To constitutionally impose a death penalty on the appellant, Jack Carlton House, pursuant to Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2534. 1 et seq.) the sentence of death must not have been imposed under the influence of passion, prejudice, or any other arbitrary factor; the evidence must support the jury's finding of a statutory aggravating circumstance; and the sentence of death must not be excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Code Ann. § 27-2537 (c) (1-3). The statute imposes determination of these questions on this court.

In our determination, we have carefully reviewed the trial transcript and record including the evidence and sentences in this case and made a comparison with the evidence and sentences in similar cases. A list of the similar cases which we took into consideration in reviewing the record in the present case is attached as an appendix to this opinion.

We have used the standards prescribed for our review by the statute and conclude that the sentences of death imposed in this case were not imposed under the influence of passion, prejudice or any other arbitrary factor, and the evidence supports the jury's finding of statutory aggravating circumstances.

A comparison of the evidence and sentences in this case with that of previous cases reveals the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases. The prior cases clearly establish that the past practice among juries in Georgia, faced with similar factual situations and like aggravating circumstances has been to impose the death penalty. We, therefore, conclude the death penalties here imposed are not excessive or disproportionate and we affirm the sentences of death in this case.

*Judgment affirmed. All the Justices concur, except Gunter, J., who dissents. Hall, J., not participating.*

ARGUED MARCH 12, 1974 — DECIDED APRIL 4, 1974 — REHEARING DENIED APRIL 23, 1974.

*Ben S. Atkins, Michael R. Schumacher,* for appellant.

*Lewis R. Slaton, District Attorney, Morris H. Rosenberg, Thomas W. Hayes, James H. Mobley, Jr., Arthur K. Bolton, Attorney General, Thomas P. Burke, Deputy Assistant Attorney General,* for appellee.

APPENDIX.

Similar Cases Considered by the Court: *Henderson v. State,* 227 Ga. 68 (179 SE2d 76); *Pass v. State,* 227 Ga. 730 (182 SE2d 779), 229 Ga. 191 (190 SE2d 530); *Jackson v. State,* 230 Ga. 181 (195 SE2d 921); *Watson v. State,* 229 Ga. 787 (194 SE2d 407); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431); *Sirmans v. State,* 229 Ga. 743 (194 SE2d 476); *Scott v. State,* 230 Ga. 413 (197 SE2d 338); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99); *Howard v. State,* 231 Ga. 186 (200 SE2d 755); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441); *Morgan v. State,* 231 Ga. 280 (201 SE2d 468); *Wheeler v. State,* 229 Ga. 617 (193 SE2d 819); *Allen v. State,* 231 Ga. 18 (200 SE2d 106); *Smith v. State,* 230 Ga. 876 (199 SE2d 793); *Johnson v. State,* 231 Ga. 138 (200 SE2d 734); *Lingerfelt v. State,* 231 Ga. 354 (201 SE2d 445).

GUNTER, Justice, dissenting.

I dissent from the judgment of the court on the ground that the present Georgia statutes authorizing the imposition of the death penalty establish a "discretionary system" as opposed to a "mandatory system" for imposing the death penalty, and such statutes are, in my judgment, unconstitutional pursuant to the decision of the Supreme Court of the United States in Furman v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346). My views in this regard are set forth in the concurring part of my concurring and dissenting opinion in *Coley v. State,*

231 Ga. 829.

I respectfully dissent.