## 29473. JARRELL v. THE STATE.

Hill, Justice.

This case is before this court on appeal and for mandatory review of three death sentences. The defendant, David Alfred Jarrell, was charged with the kidnapping, armed robbery, aggravated assault and murder of Mala Still in Gwinnett County on December 24, 1973; he was indicted on these four counts on January 21, 1974; and, following a trial by jury during the week of March 4, 1974, death sentences were imposed for murder, kidnapping and armed robbery, and a 10-year sentence was imposed for aggravated assault.

Mrs. Mala Still was employed as a teller at a Lawrenceville bank. Because the bank was closing at 1:00 p.m. for Christmas Eve on December 24, 1973, she ate lunch at the bank.

Mrs. Still was last seen alive buying groceries in a shopping center in Lawrenceville after getting off from work at the bank at 1:15 p.m. A shopping list or menu in her handwriting on a bank form found later on Tribble Mill Road included deviled eggs.

On the day in question, Mrs. Still was driving a 1970 green Chevrolet automobile which contained three cloth calendars wrapped in paper sleeves, among other items. Before dark that day a passerby picked up two calendars wrapped in paper bags and six unbroken eggs on Tribble Mill Road. Mrs. Still's car was observed parked alongside Highway 20 at 8:00 p.m. that evening, but at that time the police had not been notified of her disappearance. The car was located and identified at about midnight. It had been emptied and wiped clean with a gritty cleanser.

Gray soil under the car led to a massive search in the southern part of Gwinnett County where, on the

afternoon and evening of December 25, an egg carton and various articles of apparel and personal property belonging to the victim were found from time to time scattered and buried along Tribble Mill Road. Her body, neatly dressed, was found shortly after noon on the 26th about 15 feet off Tribble Mill Road, shot with a .45 caliber pistol three times in the head and back.

At the autopsy when the victim's clothing was removed, leaves, pine straw and other vegetable matter were found between her clothing and her back. The autopsy showed that the gunshot wounds caused her death and that she had eaten 2 to 3 or more hours prior to death.

During the course of investigation approximately 350 people were interviewed, with some 150 to 200 statements being taken or reports being made.

On January 4, 1974, Mrs. Joan Pruitt received a threatening telephone call. She called the police and looked for her husband's .45 caliber pistol. It was missing. The last person Mrs. Pruitt saw with the pistol was David Jarrell, her neighbor. That had been on December 21.

David Jarrell was interviewed by police on January 5. He was advised of his rights and told that the police wanted to talk to him about the Mala Still case. After expressing concern that the victim's husband might seek revenge on the perpetrator, Jarrell made a confession in which he admitted stealing the Pruitt gun, kidnapping Mrs. Still in her car from the shopping center, forcing her to disrobe intending to rape her, causing her to redress, shooting her, throwing things from the car as he drove from the scene, cleaning the car with Ajax, and later selling the gun to Bobby Cannon. After confessing, the defendant reenacted the crimes and identified the place where the holster for the pistol would be found.

Ballistics tests showed that the .45 pistol Jarrell sold to Cannon was the weapon which fired the bullets removed from Mrs. Still's body. Jarrell's fingerprint and palmprint were identified on the paper sleeve of one of the calendars which had been picked up by a passerby and on the one found near the scene of the crime. The defendant had been seen walking the 1.1 miles from his residence toward the shopping center at noon on Christmas Eve. He

had been seen in possession of the victim's automobile before 5:00 p.m. that same day. It had been left on Highway 20 a distance of .4 miles from the defendant's home.

At the trial the defendant denied any knowledge of the crime and called alibi witnesses to substantiate his claim that he was at home at the time of the victim's death. While not denying his confession and reenactment, he stated he "didn't remember anything" after being taken to the police station. The defendant testified he left home about 3:30 p.m. on the date of the victim's death, found the victim's car with the door half open and with the keys in it, drove it around for an hour or so and parked it back along Highway 20 at or near the place where he found it. He explained his possession of the gun by saying he had taken it from the Pruitts on Christmas Day, after the victim's death.

Defendant has filed twenty-seven enumerations of error, several of which will be combined for consideration where appropriate.

1. Defendant complains of the alleged misjoinder of the four counts of the indictment and denial of his motions to be tried separately on each count, or alternatively to be tried on the capital felonies without joinder of the noncapital felony (aggravated assault).

To avoid multiplicity of prosecutions, a prosecutor is required by law to prosecute in a single prosecution all known crimes arising from the same conduct within the jurisdiction of a single court, subject to the right to severance by the court in the interest of justice.

Code Ann. § 26-506 provides that:

"(a) When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if (1) one crime is included in the other, or (2) the crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

"(b) If the several crimes arising from the same conduct are known to the proper prosecuting officer at the time of commencing the prosecution and are within the

jurisdiction of a single court, they must be prosecuted in a single prosecution except as provided in subsection (c).

"(c) When two or more crimes are charged as required by subsection (b), the court in the interest of justice may order that one or more of such charges be tried separately."

In this case the same conduct of the accused established the commission of more than one crime (kidnapping, armed robbery, aggravated assault and murder). Thus the accused may be prosecuted for each such crime.

None of these four crimes is a lesser offense included in any of the others, nor different only by definition that one is described generally and the others specifically. Thus the accused may be convicted for each such crime.

Because the several crimes arising from the same conduct were known to the prosecuting officer at the time of commencing the prosecution and were within the jurisdiction of Gwinnett Superior Court, they were required to be prosecuted in a single prosecution, unless the court in the interest of justice ordered one or more of them to be tried separately.

*Henderson v. State,* 227 Ga. 68 (179 SE2d 76), was the first case before this court involving Code Ann. § 26-506 after its revision in 1968 (Ga. L. 1968, pp. 1249, 1267). That case involved kidnapping, rape and murder arising from the same conduct. This court held there that the "interest of justice" criterion was discretionary with the trial judge and that his discretion had not been abused in that case. See also *Pass v. State,* 227 Ga. 730 (3) (182 SE2d 799), *Slocum v. State,* 230 Ga. 762 (199 SE2d 202), and *Mathis v. State,* 231 Ga. 401, 402 (202 SE2d 73).

It is noted that the General Assembly used the words "interests of justice" rather than the phrase "if the defendant 'would be prejudiced' " as is used in some jurisdictions. See ABA Standards Relating to the Administration of Criminal Justice, pp. 285, 286 (1974). Code Ann. § 26-506, as well as the ABA criminal justice standards, shows that on the question of severance the trial court should have discretion and that the interests of the accused are to be balanced with the interests of the state. ABA Standards, supra, pp. 285-286. See also

*Dingler v. State,* 233 Ga. 462 (211 SE2d 752).

In the case before us, the testimony regarding the victim's automobile and the fingerprint identification of the defendant would necessarily have been used in all four trials if each count of the indictment had been tried separately. The testimony regarding the taking and recovery of the pistol would necessarily have been used in connection with the *armed* robbery, *aggravated* assault and murder, as well as possibly the kidnapping. The autopsy finding of leaves and pine straw beneath the victim's clothes related to the aggravated assault. Other testimony regarding the autopsy related to the murder. The defendant's written confession referred to all four crimes. If defendant's motion for separate trials had been granted, evidence of other crimes undoubtedly would have come out in each separate trial. The trial court did not abuse its discretion provided by Code Ann. § 25-506 (c) in denying defendant's motion for separate trials.

The defendant here seeks to overcome the cited Code section by contending that joining, and failing to sever, capital felonies from noncapital ones violates our Constitution, namely the provision that jurisdiction of appeals "in all cases of conviction of a capital felony" lies in this court (Code Ann. § 2-3704), and jurisdiction as to other crimes is in the Court of Appeals (Code Ann. § 2-3708).

At the outset it should be noted that these provisions deal with appellate jurisdiction. The jurisdictional provision of our Constitution applicable to superior courts, Code Ann. § 2-3901, would not preclude the joint indictment and trial of capital and noncapital felonies.

Moreover, it should be noted that this court has jurisdiction "in all cases of conviction of a capital felony." Code Ann. § 2-3704. Although "conviction of a capital felony" is critical to this court's jurisdiction (*Morgan v. State,* 201 Ga. 65 (38 SE2d 810)), once the conviction is shown, then this court has jurisdiction of that "case," including all counts of the indictment on which the accused was found guilty and all enumerations of error arising therefrom regardless of their subject matter.

In support of this constitutional argument, defendant relies upon *Gilbert v. State,* 175 Ga. 276 (1) (165

SE 120) and its prodigy, *McMichen v. State,* 59 Ga. App. 896 (2 SE2d 507). *Gilbert* cited the difference in appellate jurisdiction as evidence of the variance between rape of one person and robbery and assault with intent to murder the rape victim's husband. It held that such variant crimes could not be joined in one indictment. *McMichen,* supra, citing *Gilbert* but without mentioning appellate jurisdiction, held that rape and sodomy of the same person on the same day could not be joined in one indictment. In view of the 1968 enactment of Code Ann. § 26-506, supra, *Gilbert,* and *McMichen* are no longer correct statements of the law regarding joinder of offenses in a single indictment.

No error has been shown regarding defendant's trial for the offenses of kidnapping, armed robbery, aggravated assault and murder of this victim, all within a few hours.

2. Defendant asserts as error the trial court's overruling of his motion for change of venue which was based upon pre-trial publicity allegedly resulting in denial of a fair trial by an impartial jury. Newspaper clippings and citizen affidavits were presented by defendant; opposing affidavits were presented by the state.

The motion was overruled on February 28, 1974. At the trial commencing on March 4, the prospective jurors were examined on voir dire by defense counsel as to pre-trial publicity and impartiality.

Our Constitution provides that (Code Ann. § 2-4906) ". . . all criminal cases shall be tried in the county where the crime was committed, except cases in the Superior Courts where the Judge is satisfied that an impartial jury cannot be obtained in such county." The statutory counterpart of this constitutional provision appears in Code Ann. § 27-1101. That Code section adds the following: "When he becomes thus satisfied, he may change the venue for the trial." Provisions for motions for change of venue, evidence, procedure, etc., are set forth in Code Ann. Ch. 27-12.

As can be seen from these provisions, the grant or denial of motions for change of venue in criminal cases lies largely within the discretion of the trial judge. The

exercise of that discretion will not be reversed on appeal unless it is made to appear that there has been an abuse of discretion. *Anderson v. State,* 222 Ga. 561 (150 SE2d 638) and cases cited. That conflicting evidence is submitted in support of and in opposition to the motion, is not sufficient to demonstrate an abuse of discretion. *Thacker v. State,* 226 Ga. 170 (2), 175 (173 SE2d 186).

The best test of jury impartiality is the examination of prospective jurors on voir dire. As was said in *Krist v. Caldwell,* 230 Ga. 536 (2) (198 SE2d 161): "The test as to whether unfavorable newspaper publicity has so prejudiced a case against one accused of a crime that a fair trial cannot be had is whether the jurors summoned to try the case have formed fixed opinions as to the guilt or innocence of the accused from reading such unfavorable newspaper publicity. *Dutton v. State,* 228 Ga. 850, 852 (188 SE2d 794)."

In the case before us, the prospective jurors passed the test of impartiality. There was no error in overruling the motion for change of venue.

3. Defendant enumerates as error the trial court's refusal to sustain motions to suppress mug shots, photographs, identification of defendant by witnesses, and defendant's statement, admission, confession and polygraph test.

At the outset we note that no polygraph test, mug shot or "line up" identification of defendant was offered or admitted into evidence. The overruling of a motion to suppress evidence becomes moot when the evidence is not introduced at trial. See *Reid v. State,* 129 Ga. App. 660 (2b) (200 SE2d 456).

The only remaining item for consideration is the defendant's confession (admission, statement). However, it should be noted that the mug shots, etc., referred to above would not be subject to a motion to suppress for the reasons stated below.

A motion to suppress is used to suppress evidence (property) illegally seized. Code Ann. § 27-313. In *Reid v. State,* supra (2c), the court held that *testimony* of a sheriff concerning the property seized in an illegal search could be objected to at trial but could not be made the object of a motion to suppress, reasoning as follows (129 Ga. App. at

662-663): "If a motion to suppress were held to apply to testimony because it is for some reason inadmissible, the court would be required to hold a pre-trial full scale trial for determining what portions of the testimony or other evidence may be inadmissible upon grounds directed to the court's attention, and even that would not preclude the objecting to it on yet other grounds when it is tendered on the trial. It is simply impractical to test in advance the admissibility of testimony that may or may not be tendered on the trial and a requirement that the court attempt to do so would be intolerable." See also *Baker v. State,* 230 Ga. 741 (1) (199 SE2d 252).

This reasoning is particularly applicable to confessions which are subject to Jackson-Denno hearings at the trial. If a motion to suppress were held applicable to confessions, the trial court would be required to hold a full scale pre-trial Jackson-Denno hearing.

These enumerations are without merit.

However, what is said here is not intended to prohibit the holding of Jackson-Denno hearings prior to the commencement of the trial where the trial judge elects to do so. See *Wanzer v. State,* 232 Ga. 523, 529 (7) (207 SE2d 466).

4. Pursuant to defendant's 22 paragraph motion for discovery, production of evidence, and inspection, the state furnished the defendant with a copy of his confession; a list of the witnesses the state expected to call; a list of all property taken from defendant at his arrest; a list of property taken during execution of a search warrant; a list of physical evidence found at the scene of the crime; a copy of defendant's arrest record; a copy of his mug shot; and reports of psychiatric examination of defendant. In its response to defendant's motion, the state showed that there was no transcript of the testimony presented to the grand jury, and that the district attorney did not have any criminal records of any of the prospective witnesses. The state consented that defense counsel could view the photographs to be used in the trial and could go to the State Crime Lab to inspect the murder weapon and bullets. Lastly, the district attorney proposed an in camera inspection by the court of the state's records.

Defendant relies on Brady v. Maryland, 373 U. S. 83

(83 SC 1194, 10 LE2d 215), Giles v. Maryland, 386 U. S. 66 (87 SC 793, 17 LE2d 737), Williams v. Dutton, 400 F2d 797 (5th Cir.), and United States v. Eley, 335 FSupp. 353 (N.D. Ga.), in support of his position.

Decided in 1963 by a divided court, Brady v. Maryland, supra, held that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment (373 U. S. p. 87).

Giles v. Maryland, 386 U. S. 66 (87 SC 793, 17 LE2d 737), was decided in 1966, without majority opinion. The broad questions presented there—whether the prosecution's constitutional duty to disclose extends to all evidence admissible and useful to the defense, and the degree of prejudice which must be shown to make necessary a new trial—were not reached. At the Supreme Court's request, the state had produced two police reports which were not part of the record and which had not been considered by the Maryland courts. The case was remanded for consideration of those reports.

Williams v. Dutton, supra, a habeas corpus case decided by the Fifth Circuit Court of Appeals in 1968, arose from a conviction by a Georgia court. Williams had made a pre-trial motion for production which had been denied. The Fifth Circuit Court remanded the case for an in camera examination by the state court of the evidence to determine whether favorable evidence material to guilt or punishment had been suppressed.

As was noted in United States v. Eley, supra, although other federal courts have held that Brady does not deal with pre-trial discovery, Williams v. Dutton makes Brady applicable to pre-trial discovery in state court when raised on habeas corpus in federal court. Eley itself established a procedure for pre-trial discovery in federal criminal cases.

Throughout the decade following the Brady decision, this court pointed out that there is no statute or rule of procedure in force in Georgia governing pre-trial discovery in criminal cases. Blevins v. State, 220 Ga. 720 (2) (141 SE2d 426); Henderson v. State, 227 Ga. 68 (2) (179 SE2d 76); and Hicks v. State, 232 Ga. 393, 395 (207 SE2d 30), and cases cited. Whatever rules of procedure there

are, have been formulated by the trial courts as was done in Eley, supra. See, e.g., *Creamer v. State,* 232 Ga. 136 (2) (205 SE2d 240); *Hicks v. State,* supra.

Such procedures were worked out here. The district attorney furnished certain materials, stated (without contradiction) that other materials did not exist or were not in his possession, offered to make other materials available to defendant's counsel, and proposed an in camera inspection by the court as to the remainder.

Under the procedure formulated in Eley, supra, after production by the district attorney it is up to the defendant to decide whether to seek in camera inspection.

Without specificity, defendant enumerates as error that the trial court erred in not granting his motion for discovery, inspection and production of evidence. The trial court denied that motion after the district attorney responded to it as set forth above.

In Moore v. Illinois, 408 U. S. 786 (92 SC 2562, 33 LE2d 706), decided in 1972 by a still divided bench, the Supreme Court declared its adherence to Brady but found that five unproduced evidentiary items were not material to the defense under the Brady standard, and that the appellant there had failed to show that the sixth such item made it impossible for a witness to see the commission of the crime and identify appellant as its perpetrator. The majority there stated: "We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." 408 U. S. 795. This statement confirms similar interpretations of Brady by this court. See *Pass v. State,* 227 Ga. 730 (12), 737 (182 SE2d 799).

The overruling of defendant's motion for discovery does not show a violation of defendant's constitutional right to due process. This enumeration shows no error. *Hicks v. State,* supra; Moore v. Illinois, supra.

At the trial, one of the state's witnesses was the cashier at the grocery store where the victim did her shopping. This witness testified that she accepted the victim's check on December 24 after 1:00 p.m. On cross examination defendant's counsel showed that this witness had given a tape recorded statement to the police.

Defendant made a motion to strike this witness' testimony on the ground that his motion for discovery of tapes had been denied. The motion to strike this testimony was overruled.

Similar motions to strike the testimony of other witnesses who had given written statements were overruled. The grounds of defendant's motion for new trial based upon these motions to strike were also overruled.

The courts will strive to prevent the conviction of any person not guilty as charged. They will strive to prevent excessive punishment of those who are guilty. However, the object of a criminal trial is to determine innocence, or guilt and punishment. Striking the testimony of witnesses, creating gaps in the chain of proof, is not consistent with the purpose of a criminal trial. Defendant's counsel has cited no authority for the proposition that a motion to strike the testimony of a witness should be sustained where the witness' written statement to investigating officers was not produced on motion for discovery. (In fact, enumerations of error 10 and 11 were not argued separately from the argument as to the overruling of defendant's motion for discovery.)

We find no error in allowing the witnesses who had given statements to investigating officers to testify, and in allowing their testimony to be considered by the jury.

5. Defendant has enumerated as alleged error juror disqualification under Witherspoon, contending that the trial court erred in excusing jurors who were unalterably opposed to the death penalty. Three jurors were excused for this cause. We have examined the voir dire transcript. This enumeration is without merit. Witherspoon v. Illinois, 391 U. S. 510, 520 (88 SC 1770, 20 LE2d 776); Whisman v. State, 224 Ga. 793 (164 SE2d 719); Eberheart v. State, 232 Ga. 247, 250 (206 SE2d 12), and cases cited.

6. Defendant enumerates as error the court's permitting the state's chief investigator on this case to testify because he had heard the testimony of other witnesses, not having been sequestered.

Code § 38-1703 provides for sequestration of witnesses upon motion by a party. Its enforcement long has been vested in the discretion of the trial court.

*Thomas v. State,* 27 Ga. 287 (8). In *McNeal v. State,* 228 Ga. 633 (4) (187 SE2d 271), it was held that the judge did not abuse his discretion in allowing the investigating detective to remain in the courtroom and testify after other witnesses.

Defendant relies on *Stuart v. State,* 123 Ga. App. 311 (1) (180 SE2d 581), where the court held that the trial judge erred in deciding as a matter of policy, rather than discretion, that the state's unsequestered witness could be called to the stand at such point in the trial as the prosecutor pleased. The effect of *Stuart* is that the trial court should exercise its discretion both as to permitting exceptions to sequestration of witnesses, and as to sequence of calling unsequestered witnesses; i.e., that the state show some need not to call the unsequestered witness first and the trial court exercise its discretion based upon that showing.

We find it unnecessary to review *Stuart* here, because in the case before us the district attorney stated his need for the services of the witness during trial even though not testifying first and the trial judge, citing *Stuart,* stated that he was exercising his discretion to allow the witness to remain in the courtroom as requested by the state.

This enumeration is without merit.

7. Although we have considered defendant's enumeration of error regarding his motion to suppress his confession above (Division 3), we have reviewed the transcript, including particularly the Jackson-Denno hearing.

The defendant was advised of his Miranda rights. He volunteered that he was apprehensive about his mental condition and the victim's husband. The officers stated that medical help could be provided just as legal assistance would be if requested. They said they could not say what would happen if by some chance the victim's husband found the responsible person before the police did, but that they would protect a person in custody.

The defendant testified at trial that he could not remember making a confession or reenacting the crime.

We do not find the confession inadmissible as having been induced by hope of benefit or fear of injury within the

meaning of Code § 38-411 or otherwise inadmissible. The officer's statement regarding the victim's husband and protection by custody was a truism. The statement regarding medical aid cannot be considered a benefit; otherwise the offer of assistance of legal counsel required by Miranda could be construed as a benefit and any confession given after a Miranda warning would be inadmissible.

8. Defendant contends that the court erred in not granting his motions for directed verdict as to the kidnapping, armed robbery and aggravated assault counts, contending that as they all happened at the same time, they were merged in the murder count. This enumeration of error was found to be without merit in Division 1 of this opinion. Code Ann. § 26-506 (a).

9. Defendant enumerates as error the court's charge as to the presumption of malice arising from the use of a deadly weapon, contending that it was conflicting and confusing with the court's charge as to defendant's presumption of innocence. The court's instruction did not shift the burden to defendant to disprove malice. In context, the instruction was neither conflicting nor confusing with the defendant's presumption of innocence. *Jones v. State,* 234 Ga. 108 (1), and cases cited.

Defendant contends further that the court erred in failing to charge that while not incumbent upon the defendant, it was his privilege to present evidence to rebut the presumption of malice arising from the use of a deadly weapon. Defendant's defense was that he did not shoot the victim; i.e., alibi. His defense was not that he shot the victim accidentally or in self-defense. The omission to charge was not error.

Defendant asserts that the court erred in charging the jury as to aggravated assault, contending that there was no evidence to show that the gun was used in the assault. Defendant's confession showed that he entered the victim's car with the gun drawn, that he made the victim drive around, that he made her remove her clothes, that he was going to rape her but did not, that she put her clothes back on, and he later shot her in the head and took her car. The evidence showed that the gun was used in the kidnapping, in the armed robbery, and in the murder. The

trial court did not err in submitting to the jury the question of whether the gun was used in the assault.

10. Defendant's final enumeration alleges the sentence of death imposed upon the verdict of the jury was and is contrary to the United States Constitution as codified in Code Ann. § 1-808 pertaining to cruel and unusual punishment.

The constitutionality of the statute (Ga. L. 1973, pp. 159 et seq., Code Ann. § 27-2534.1), under which the death sentence was imposed has been upheld in *Coley v. State,* 231 Ga. 829 (204 SE2d 612); *House v. State,* 232 Ga. 140 (205 SE2d 217); *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659); and *Moore v. State,* 233 Ga. 861 (213 SE2d 829).

The constitutionality of its application to David Alfred Jarrell will be determined on sentence review.

11. *Sentence Review.* The death penalties imposed in this case must conform to the standards set forth in Code Ann. § 27-2534.1 in order to authorize affirmance. This court is to determine whether the sentences of death were imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the jury's finding of a statutory aggravating circumstance; and, whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, as required by Code Ann. § 27-2537 (c) (1-3).

In recommending the death penalty, the jury found the following aggravating circumstances:

1. As to kidnapping:

a. The offense of kidnapping was committed while the offender was engaged in the commission of two additional capital felonies, to wit: the armed robbery and murder of Mala Still (see Code Ann. § 27-2534.1 (b) (2)).

b. The offender by his act of kidnapping knowingly created a great risk of death to more than one person in a public place by means of a weapon which would normally be hazardous to the lives of more than one person (see Code Ann. § 27-2534.1 (b) (3)).

c. The offense of kidnapping was outrageously and wantonly vile, horrible and inhuman in that it involved torture to the victim and depravity of mind on the part of

the defendant (see Code Ann. § 27-2534.1 (b) (7)).

2. As to armed robbery:

a. The offense of armed robbery was committed while the offender was engaged in the commission of two additional capital felonies, to wit: the kidnapping and murder of Mala Still (see Code Ann. § 27-2534.1 (b) (2)).

b. The offender by his act of armed robbery knowingly created a great risk of death to more than one person in a public place by means of a weapon which would normally be hazardous to the lives of more than one person (see Code Ann. § 27-2534.1 (b) (3)).

c. The offense of armed robbery was outrageously and wantonly vile, horrible and inhuman in that it involved torture to the victim and depravity of mind on the part of the defendant (see Code Ann. § 27-2534.1 (b) (7)).

3. As to murder:

a. The offense of murder was committed while the offender was engaged in the commission of two additional capital felonies, to wit: the armed robbery and kidnapping of Mala Still (see Code Ann. § 27-2534.1 (b) (2)).

b. The defendant committed the offense of murder for the purpose of receiving money and other things of monetary value, to wit: the automobile as described in the indictment (see Code Ann. § 27-2534.1 (b) (4)).

c. The offense of murder was outrageously and wantonly vile, horrible and inhuman in that it involved torture to the victim and depravity of mind on the part of the defendant (see Code Ann. § 27-2534.1 (b) (7)).

There is no evidence to support the findings that the offender knowingly created a great risk of death to more than one person in a public place. There is evidence to support the jury's findings as to the other statutory aggravating circumstances as to the counts of murder and kidnapping, as hereinafter explained.

However, the death sentence imposed for the armed robbery offense cannot be sustained. There is no indication that this sentence was imposed under the influence of passion, prejudice or any other arbitrary factor, but we find the death sentence has rarely been imposed for the offense of armed robbery. *Gregg v. State,* 233 Ga. 117, 127 (6) (210 SE2d 659). Thus, under the test

provided by statute for comparison (Code Ann. § 27-2537 (b) (3)), the death sentence for armed robbery must be considered to be excessive or disproportionate to the penalties imposed in similar cases. Therefore as prescribed by Code Ann. § 27-2537 (c) (3) and pursuant to Code Ann. § 27-2537 (e) (2), the sentence of death for the offense of armed robbery must be set aside and the case remanded for resentencing by the trial court on Count 2 of the indictment.

In *Gregg,* supra, it was held that although one capital felony (armed robbery) could be the basis for finding aggravating circumstances as to another capital felony (murder), the other (murder) could not then be the basis of the former (armed robbery). 233 Ga. at 127.

By the same principle, the death penalty for the offense of kidnapping cannot be supported by the offense of murder, where the death penalty for murder is supported by the kidnapping. However, in this case, the armed robbery supports, factually and legally, the death sentence as to murder, and the murder supports, factually and legally, the death sentence for kidnapping.

We have reviewed the trial transcript and record and have made a comparison of the facts and sentences in similar cases pursuant to the mandate of the statute. The cases considered by the court in this review are listed in an appendix attached to this opinion.

The cases reviewed included all murder cases coming to this court since January 1, 1970. All kidnapping cases were likewise reviewed. The comparison involved a search for similarities in addition to the similarity of offense charged and sentence imposed.

All of the murder cases selected for comparison involved murders wherein all of the witnesses were killed or an attempt was made to kill all of the witnesses, and kidnapping cases where the victim was killed or seriously injured.

The cases indicate that, except in some special circumstance such as a juvenile or an accomplice driver of a get-away vehicle, where the murder was committed and trial held at a time when the death penalty statute was effective, juries generally throughout the state have imposed the death penalty. The death penalty has also

been imposed when the kidnap victim has been mistreated or seriously injured. In this case the victim was murdered.

The cold blooded and callous nature of the offenses in this case are the types condemned by death in other cases. This defendant's death sentences for murder and kidnapping are not excessive or disproportionate to the penalty imposed in similar cases. Using the standards prescribed for our review by the statute, we conclude that the sentences of death imposed in this case for murder and kidnapping were not imposed under the influence of passion, prejudice or any other arbitrary factor.

In this connection, we have considered the district attorney's pre-sentencing argument in which he referred to the victim's defenselessness as compared with the defendant's rights to counsel, to public trial, to be confronted by witnesses, to summons witnesses, and to automatic appeal of conviction (which the jury had previously found). His statement that the rights of the defendant are safeguarded and protected did not in our opinion encourage the jury to attach diminished consequences to their verdict as to punishment.

The evidence supports the jury's findings of statutory aggravating circumstances as to the counts of murder and kidnapping. After considering both the crimes and the defendant and after comparing the evidence and sentences in this case with those of similar cases reviewed and compared, we find that the sentences of death for the offenses of murder and kidnapping are not excessive or disproportionate to the penalties imposed in similar cases and that those sentences should be affirmed.

*Judgment affirmed in part; reversed in part with direction. All the Justices concur, except Gunter, J., who dissents.*

ARGUED JANUARY 17, 1975 — DECIDED APRIL 29, 1975 — REHEARING DENIED MAY 20, 1975.

*Margaret Hopkins, James R. Venable,* for appellant.
*Bryant Huff, District Attorney, Dawson Jackson, Assistant District Attorney, Harrison & Garner, G.*

*Hughel Harrison, Arthur K. Bolton, Attorney General, John B. Ballard, Jr., Assistant Attorney General,* for appellee.

APPENDIX.

Similar cases considered by the court: *Lingo v. State,* 226 Ga. 496 (175 SE2d 657); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840); *Pass v. State,* 227 Ga. 730 (182 SE2d 779); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431); *Whitlock v. State,* 230 Ga. 700 (185 SE2d 90); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99); *Howard v. State,* 231 Ga. 186 (200 SE2d 755); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441); *Morgan v. State,* 231 Ga. 280 (201 SE2d 468); *Creamer v. State,* 232 Ga. 137 (205 SE2d 240); *House v. State,* 232 Ga. 140 (205 SE2d 217); *Morgan v. State,* 233 Ga. 360 (211 SE2d 285); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810); *Moore v. State,* 233 Ga. 861 (213 SE2d 829); *Henderson v. State,* 227 Ga. 68 (179 SE2d 76); *Akins v. State,* 231 Ga. 411 (202 SE2d 62); *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12).