## DeLOACH *v.* SIKES.

No. 7347. NOVEMBER 16, 1929.

*H. H. Durrence, R. M. Girardeau,* and *C. L. Cowart,* for plaintiff in error.

*Gordon Knox,* contra.

GILBERT, J. The exception is to the judgment refusing a new trial. The case arose by the levy of an execution in favor of E. H. Sikes against L. V. DeLoach on land, and the filing of claim by E. V. DeLoach, the wife of the defendant in fi. fa. The case was previously before this court, where a full statement of the facts may be found. *Sikes* v. *DeLoach,* 166 *Ga.* 887 (144 S. E. 655). On the trial the evidence showed, without contradiction, that the land levied upon was formerly the property of Frank Smith, the father of the claimant. Smith executed a deed to L. V. DeLoach on

May 20, 1893, DeLoach borrowing $1000 from Sikes with which to make a part payment on the land. L. V. DeLoach executed purchase-money notes to Smith, and received in return a bond for title. Subsequently the notes were assigned to Claxton Bank; and on January 3, 1911, Smith executed a deed conveying the land to Claxton Bank to secure the payment of the notes. On April 1, 1914, L. V. DeLoach negotiated and obtained a loan from Chicamauga Trust Company (which was afterwards paid off), with which to take up the notes held by the Claxton bank, and executed a security deed conveying the land to the Trust Company, and on April 3, 1914, Claxton Bank conveyed the land by quitclaim deed to L. V. DeLoach. E. H. Sikes obtained, by transfer and assignment, promissory notes made by L. V. DeLoach and G. W. DeLoach, payable to Herschel DeLoach, which were afterwards renewed by note dated December 17, 1921, due January 1, 1923, made payable to Sikes. At the August term, 1924, of the city court of Claxton, Sikes sued on the note to judgment, and the fi. fa. issued from this judgment on November 1, 1926, was levied on the land claimed. On March 11, 1924, the attorney for E. H. Sikes notified L. V. DeLoach and G. W. DeLoach, payees of the note, of his intention to sue on it and to claim attorney's fees. On March 21, 1924, L. V. DeLoach executed a deed for the purpose of conveying the land to his wife, E. V. DeLoach, now claimant.

The claimant testified that she consented to the making of the bond for title by her father to her husband, L. V. DeLoach, so that he could borrow money on it. "I had the deed put in his name because he could transact business better than I could, but I never let him use the land only to make improvements on it. He got my permission whenever he borrowed money on it. Everybody knew that I claimed it and that it was my property. I didn't put the Claxton Bank on notice that it was my property when they were putting money on it, but I suppose they knew it was mine; father was with Mr. DeLoach when he borrowed the money. I didn't put the Chicamauga Trust Company on notice that it was my land; they didn't ask me. My father gave me an interest of $500 in the first tract of land, and we paid the remaining $300 by selling timber off the place. Mr. DeLoach paid the $300 for me. He cut the timber off the land and sold it and paid the money for me. I knew all this time from 1893 that the title to the land was in Mr.

DeLoach as long as he stayed in possession of it. My father never made me a deed to the first place nor the one levied on. He said that he would make the deed in my husband's name, and when I demanded a deed from him he could make it to me. I knew when the Claxton Bank bought those notes and loaned him the money to pay on the place. They loaned to me through my husband; my name wasn't on the notes, and the Claxton Bank didn't look to me for payment, not that I know of. They loaned my husband the money to pay for this particular tract of land. I knew when the land was put in the Chicamauga Trust Company, and that it was done in my husband's name. I knew that my husband borrowed money on this same tract of land from Mr. C. S. Grice. I knew that my husband was giving in this land for taxation as his own. I knew all the time from 1893 to 1924 that he was giving it in in his name, but he never did claim the property as his. He has always given in the property for taxation; since 1924 he has given it in in my name, but I never asked him to give it in at all." Sikes testified, without contradiction, that he had no notice or knowledge of the secret equity of the wife, and the cashier of the Claxton Bank testified that the bank had no notice or knowledge thereof at the time it bought the notes.

The court directed a verdict finding the property subject to the fi. fa. The claimant moved for a new trial, complaining that the court erred in directing the verdict, because there was a disputed issue of fact which should have been submitted to the jury. It is contended, although the claimant allowed the title to the land to be in the name of her husband so that he could borrow money and thus obtain credit, that the fi. fa. levied upon the land was obtained by a suit on notes not originally made to the plaintiff in fi. fa., and that the plaintiff in fi. fa. did not extend credit on the faith of the ownership of the property by the husband, L. V. DeLoach. This contention is not supported by the evidence. The evidence demands a finding to the contrary. Without conflict, it is shown that for a number of years, that is, from 1893 until the giving of the notice of suit, title, either legal or equitable, remained in the husband with the consent of the claimant for the acknowledged purpose of obtaining credit and negotiating loans. The evidence shows that Sikes, defendant in error, did not have notice of the secret equity when he bought the outstanding notes of the defendant

in fi. fa. Claimant contends that because she resided on the land the possession was as much hers as that of her husband. The law has been established contrary to this contention. Civil Code (1910), § 4528; *Austin* v. *Southern Home Asso.*, 122 *Ga.* 439 (4) (50 S. E. 382); *Steele* v. *Graves*, 160 *Ga.* 120 (4) (127 S. E. 465). See also *Walker* v. *Neill*, 117 *Ga.* 733 (10), 745 (45 S. E. 387). Obviously there is no merit in the general grounds, and, as we have shown, no other verdict than that directed could have properly been returned by the jury. The verdict was demanded by the evidence, and therefore the court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*

RUSSELL, C. J. I concur in the judgment of affirmance. The evidence authorized the verdict, and I am willing to sustain the judgment of the trial court in his approval of the verdict rendered, for he was at the trial and saw and heard the witnesses; but I am unwilling to hold as matter of law that the verdict returned was demanded by the evidence.