WOOD, trustee, *v.* LOVELADY *et al.*

No. 9198. APRIL 14, 1933.

*A. J. Henderson* and *Roberts & Vandiviere,* for plaintiff.

*Roscoe Pickett* and *Howell Brooke,* for defendants.

BELL, J.   J. Hines Wood, as trustee for the bankrupt estate of A. J. Lovelady, brought a suit in equity against Lovelady and his wife, to subject to the claims of creditors represented by the plaintiff a house and lot claimed by Mrs. Lovelady in virtue of a deed executed to her by her husband several years before he was adjudicated a bankrupt, but not recorded until after the debts in favor of such creditors were created.   When the credits were extended, the record title was in the husband; and the petition alleged that credit was extended to him by the various creditors upon the faith of his apparent ownership of the property.   The petition prayed that Mrs. Lovelady be held and adjudged to be estopped from setting up any claim to the property, and that it be administered in bankruptcy as a part of the estate of A. J. Lovelady.   The defendants filed an answer alleging that the title was bona fide in Mrs. Lovelady, and denying that she had been guilty of any conduct such as would raise an estoppel against her.   The trial resulted in a verdict in favor of the defendants.   The plaintiff excepted to the overruling of his motion for a new trial, based upon the general grounds and several special grounds.

The evidence authorized the verdict for the defendants.   According to their testimony, the property in question was purchased by Mrs. Lovelady in 1919, at which time she paid a part of the purchase-money in cash and gave notes for the balance.   A bond for title was executed and delivered to her as the purchaser and obligee, and the remainder of the purchase-money was finally paid to the seller by A. J. Lovelady in part satisfaction of an indebtedness due by him to his wife, represented by notes which were in evidence.   These notes were in existence at the time the payments were made by A. J. Lovelady, and credits for these payments were duly entered thereon.   The deed made in pursuance of the bond for title was executed on June 7, 1920, not to the obligee, Mrs. Lovelady, but to her husband, A. J. Lovelady.   This deed was recorded on December 31, 1920.   Mrs. Lovelady testified, that, as soon as she discovered that the deed had been made to her husband, she called his attention to the fact that the conveyance should have been made to herself, and that he then (January 8, 1921) executed a deed of conveyance to her, as she "had paid for the property."

Although this deed recited a consideration of love and affection, the evidence authorized the inference that the transactions between the husband and wife were bona fide, and that the legal title was rightfully placed in Mrs. Lovelady. This deed was not recorded until November 20, 1930, and A. J. Lovelady was adjudicated a bankrupt on January 30, 1931.

The claims of only two creditors were involved by the evidence. One was a claim of W. T. Poole based on notes executed by A. J. Lovelady for money borrowed in November, 1921, and June, 1922. The other was an account in favor of Aycock-Robinson-Smith Company for merchandise sold and delivered to A. J. Lovelady between September, 1929, and November 20, 1930, the date when the deed to Mrs. Lovelady was recorded. During the several years which intervened between the date of the execution of this deed and the date of its record, Mr. and Mrs. Lovelady occupied the house and lot as a residence, and the record title stood in the name of the husband. In the meantime he returned the property for taxation and procured fire insurance thereon, both in his own name. Mrs. Lovelady testified that she did not know that the property was carried on the tax books in the name of her husband, or that the insurance policies were issued to him as owner. She requested him to attend to these matters for her, and allowed him a credit of $200 annually upon the note which she held against him, in consideration of the combined expense for taxes and insurance, upon his estimate and statement that this was the approximate amount which he expended for these purposes. The evidence authorized the inference that her failure to have the deed from her husband to herself promptly recorded was due to neglect or oversight.

W. T. Poole testified as follows: "At the time I advanced or loaned the money represented by these two notes, I knew where Mr. Lovelady lived, where his residence was, in the town of Ball Ground. That was a nice home. In my opinion that home at that time was worth $10,000. I thought that home place was the property of Mr. Lovelady. He lived in the house at that time, and he has lived in the house always since that time. I did not know he didn't own this property at the time I made this loan. From the fact that he lived in the property and continued to live in it for a number of years, it was my opinion that the property belonged to him,

because I should have thought if it didn't they would have told me that it wasn't. Had I known that Mrs. Lovelady owned this property at that time I would not have loaned him this money." There was no evidence that this creditor examined the deed records, or caused them to be examined, for the purpose of investigating the record title. He had no information as to what the public records might have shown, and was not misled by the failure of Mrs. Lovelady to have her deed recorded; nor does it appear that he had any knowledge of the facts that the property was returned for taxation and insured in the name of the husband.

J. C. Aycock, credit manager Aycock-Robinson-Smith Company, testified that he was influenced to extend the credit for his company by a report from R. G. Dun & Company as to the financial ability of A. J. Lovelady. What purported to be a statement made by Lovelady to Dun & Company was introduced in evidence, and contained the language "Home—Ball Ground, $15,000." This statement was signed "A. J. Lovelady & Co. By Ella Holcombe." J. E. Mardre testified that while employed by R. G. Dun & Company as a traveling reporter he procured this statement from Mr. Lovelady in his store in Ball Ground, and that it was based upon information given by Mr. Lovelady in person; and that after the statement was reduced to writing Mr. Lovelady requested Miss Holcombe, his employee, to sign the same for him, "A. J. Lovelady & Company," being the name in which he conducted business.

A. J. Lovelady testified that he made no such statement to Mardre, and had not represented himself as the owner of the property in question. Miss Holcombe testified, that, while she recognized the signature as having been made by herself, she did not recall the circumstances under which she signed the document; and further: "As to this financial statement on the R. G. Dun & Company form, dated July 27, 1928, I do not remember any man coming in there and asking Mr. Lovelady for a financial statement and Mr. Lovelady giving him a financial statement and then telling me to sign it. He never did give me that authority to sign any financial statement; the only thing I would sign was this, he gave me authority to do this, when he would buy a bill of merchandise I usually signed that for him. Some times he would ask me to sign that, because his eyes were not so good, he would say,

'Sign this.' When a traveling salesman would sell him a bill of merchandise, I would sign those for him. As to whether or not when I signed this statement here Mr. Lovelady told me to sign it, he never did tell me to sign a financial statement. There would be men coming in there wanting financial statements, and he would say, 'I don't want any statement,' and he would say, 'I can buy all the goods I want without that;' and if I signed this it was after some man came up and told me that he said to sign it, and naturally I would sign it. I wouldn't call Mr. Lovelady and ask him, and when I signed it I wouldn't know what I was signing; I wouldn't do it. I would not have signed that statement without the authority of somebody's direction to sign it. Mr. Lovelady did not authorize me to sign that statement. . . I do not recall a man by the name of Mardre representing R. G. Dun & Company coming to the store on or about July, 1928. I don't say that he didn't come in there, because I don't know; if he came there I don't know it. If I had known that I was signing a financial statement I would not have signed it, because I think that would have been up to him to sign it himself. I never did read everything that I signed. As to whether or not all that was necessary was for some person to come up there and hand me a paper and I signed A. J. Lovelady & Company's name to it, by me,—I took it for granted, when a salesman came up there and says Mr. Lovelady says sign this, that Mr. Lovelady had told him that. I don't remember a man by the name of Mardre. I don't know whether Mr. Lovelady gave him those figures there or not. I didn't hear any R. G. Dun & Company man talk to Mr. Lovelady about any financial statement. Probably at times I would be back in the office and him out in the front part of the store, and he would say for some man to carry something to me to sign, and this man would come there and say that Mr. Lovelady says sign this. I had been accustomed to signing for bills of merchandise; but if I had known that this was a financial statement, I would not have signed it. I won't say that Mr. Lovelady did or did not direct me to sign this particular paper; but if he did, I don't recall it. It looks like he would have said something to me about it. He would always tell the men that he wasn't making any financial statements."

The above is a sufficient statement of the facts. In *Bell* v. *Stewart*, 98 *Ga.* 669 (27 S. E. 153), it was held that where a wife's

money was used by her husband in part payment for a tract of land, with the understanding that he would make her a deed to "her pro rata part of the land purchased," and where in pursuance of this agreement he obtained a conveyance of the entire tract to himself, it was thereafter proper and lawful for the husband to convey to the wife a portion of the land commensurate with the amount of the wife's money which was used in the purchase; and that "If this was done in good faith before a particular creditor of the husband obtained a judgment against him, the wife's title was superior to the judgment, although in the creation of the debt upon which this judgment was founded the creditor may have extended credit upon the belief that the entire tract belonged to the husband, it not appearing that the wife had ever said or done anything to mislead the creditor or warrant him in believing that she treated the whole tract as the husband's exclusive property, and it not being shown that she permitted him to use it as such." The present case is not one in which the wife was the owner of a *mere equity* in the property, but it is undisputed from the evidence that she held the *legal title* at the time when the debts were created respectively; and so far as the claim of W. T. Poole is concerned, the evidence shows that he simply acted upon the belief that the property was that of the husband because the husband and wife were occupying the same together as a residence. He did not at any time come in contact with Mrs. Lovelady, and the record discloses no fact upon which he could justly base a claim of estoppel against her. See further, in this connection, *Ford* v. *Blackshear Mfg. Co.,* 140 *Ga.* 670 (3) (79 S. E. 576) ; *Hunt* v. *Doyal,* 128 *Ga.* 416 (6) (57 S. E. 489) ; *Steele* v. *Graves,* 160 *Ga.* 120 (4) (127 S. E. 465). As to the contention made in behalf of Aycock-Robinson-Smith Company, it is enough to say that the evidence made an issue of fact as to whether the husband represented himself to Dun & Company as being the owner of the property in question. As indicated above, neither creditor had any knowledge that the property was being returned for taxation and was insured in the name of the husband; nor did either of them make any investigation to ascertain the status of the record title. The mere failure of the wife to have her deed recorded could not have misled either of the creditors, because neither of them acted upon what was shown by the record. There may be other reasons why the wife should not be estopped,

under the facts of this case. See *Orr Shoe Co.* v. *Lee,* 159 *Ga.* 523 (2) (126 S. E. 292). The facts of the present case do not bring it, as a matter of law, within the ruling made in *Kennedy* v. *Lee,* 72 *Ga.* 39; nor is the case governed by any of the other decisions cited by counsel for the plaintiff in error, including *Rowe* v. *Cole,* 171 *Ga.* 391 (3) (155 S. E. 473); *Roland* v. *Wilkinson-Bolton Co.,* 165 *Ga.* 194 (140 S. E. 368); *Sikes* v. *DeLoach,* 166 *Ga.* 887 (2). (144 S. E. 655); *DeLoach* v. *Sikes,* 169 *Ga.* 465 (150 S. E. 591); *Brown* v. *Parks,* 169 *Ga.* 712 (8), 717 (151 S. E. 340). The court did not err in refusing to grant a new trial on the general grounds.

■ It follows from what has been said that the court did not err, as against the plaintiff, in instructing the jury in the following language : "The mere fact that the property was so returned for taxes by the defendant A. J. Lovelady, and that the insurance on the property was carried in the name of the defendant A. J. Lovelady, would not alone and of itself be sufficient to authorize a recovery by the plaintiff, unless . . some one or more of the creditors represented by the plaintiff knew of such facts and relied upon them in extending credit to the defendant A. J. Lovelady;" the assignment of error being in substance that this instruction eliminated from the jury any right to consider these circumstances in connection with the "presumptive possession" of the husband, as evidence tending to show title in him. Under the allegations of the petition, the plaintiff was seeking merely to raise an estoppel against the wife, and not to show actual title in the husband. The creditors could have no advantage of facts and circumstances of which they had no knowledge, and upon which, therefore, they did not rely in extending credit to the husband. See *Burt* v. *Kuhnen,* 113 *Ga.* 1143 (39 S. E. 414).

■ W. T. Poole, one of the creditors in whose behalf the suit was brought, testified that in making the loans to A. J. Lovelady he dealt with a man by the name of J. H. Higgins, who claimed to be the agent of A. J. Lovelady to procure the loans. He further testified that Higgins brought the notes to him with Lovelady's signature thereon, and that he had no dealings whatever directly with Lovelady. In one of the grounds of the motion for a new trial error is assigned upon the rejection of testimony of Poole, to the effect that "Mr. Higgins told him he was getting this money

for Mr. Lovelady, and that Mr. Lovelady owned this residence here at that time." The objection was on the ground that it did not appear that Higgins was authorized to make such a representation in behalf of Lovelady. After some colloquy between court and counsel, the judge addressed the attorney for the plaintiff, as follows: "Unless you can show authority from the principal to make the statement, I don't think it is admissible. I will exclude it for the present. If you have any authority on it, I will be glad to hear from you about it later." Error is assigned on this ruling. It does not appear that the evidence was ever again offered, or that there was any request to be heard further upon the question, in accordance with the invitation from the judge. Under repeated rulings, this ground fails to show cause for a reversal. *Stone* v. *State,* 118 *Ga.* 705 (9) (45 S. E. 630, 98 Am. St. R. 145) ; *Cawthon* v. *State,* 119 *Ga.* 395 (7) (46 S. E. 897) ; *Hix* v. *Gulley,* 124 *Ga.* 547 (52 S. E. 890) ; *Sasser* v. *State,* 129 *Ga.* 541 (3) (59 S. E. 255) ; *Becker* v. *Donalson,* 133 *Ga.* 864 (3) (67 S. E. 92) ; *Lindsay* v. *State,* 138 *Ga.* 818 (7) (76 S. E. 369).

The plaintiff assigned error upon an instruction that if "the defendant A. J. Lovelady was not in possession of the property described in the petition, but [if] the defendant Mrs. Cleo T. Lovelady had the open, visible, exclusive, and unambiguous possession of the property, such possession as was not liable to be misconstrued or misunderstood, then the plaintiff would not be entitled to recover." It is complained that this charge was confusing and erroneous, because it did not "fix any time when such possession should have existed in order for the charge to apply," and could have "had reference to the time of the filing of the suit and not to the time of the extension of credit by either of the creditors represented by movant." It is pointed out that the deed to Mrs. Lovelady was recorded before the suit was filed, but was not recorded at the time the credit was extended. "Movant insists that under this excerpt the jury could have reasonably inferred that if Mrs. Lovelady was in possession of the premises at the time of the bringing of the suit, the plaintiff would not be entitled to recover, and such instruction was most harmful and injurious to movant." Upon a consideration of the entire charge, it does not appear that the excerpt here referred to was calculated to mislead or confuse the jury as contended.

874

The only other ground of the motion for a new trial was abandoned. The evidence authorized the verdict, and no reversible error appears. *Judgment affirmed. All the Justices concur.*