## 32995. PRESNELL v. THE STATE.

Hill, Justice.

This is a death case. Virgil Delano Presnell, Jr., was convicted by jury of four crimes against two girls, aged eight and ten years old. He was convicted of kidnapping and murdering the younger child, and of kidnapping with bodily injury and raping the older child. The jury found that the murder of the younger child was committed while the offender was engaged in the commission of the kidnapping with bodily injury of the older child, that the kidnapping with bodily injury of the older child was committed while the offender was engaged in the commission of the rape of that child, and that the rape of the older child was committed while the offender was engaged in the commission of the murder of the younger child. The jury imposed the penalty of death for the murder of the younger child, the kidnapping with bodily injury of the older child, and the rape of the older child. The

defendant was sentenced to twenty years in prison for the kidnapping of the younger child.

There was evidence from which the jury was authorized to find the following facts:

The defendant was seen the day before the crimes by a lady who was picking up her children from school. He was returning to his blue car which was parked a short distance away from the school. At trial the defendant took the stand and explained that he had walked to the wooded area across from the school where he watched the little girls through binoculars while he played with himself. He testified that he had frequently visited adult bookstores and movies, and that he was reading a book entitled "He Warmed Her Young Body." He returned the next day, the day of the crimes, and saw two little girls walk from the school down a road beside the woods. The defendant was again seen by the same lady who had observed him the day before. The defendant testified that he had driven to the wooded area near the school where he again watched the little girls. He had brought a sleeping bag, a rug, a jar of lubricant and rope. He waited for the two children, one of whom he said reminded him of the girl in his book. The girls entered the wooded area on a path which led to their homes on the other side, a distance of less than five hundred yards. The older child was ten years old, the younger child was eight. The defendant grabbed them from behind, covered their mouths with his hand and told them he would use the gun in his pocket if they did not do as told. He tied them but then untied them and took them to his car and drove away with them.

The mother of the younger child became concerned and drove to the school. Finding the lights out in her daughter's schoolroom, she walked the path through the wooded area. On the trail she found school books in which the older child's name had been written. She contacted the school principal, her husband, and the police. With neighbors and other volunteers the parents of the two children continued searching for them.

After stopping for gasoline at a self-service station, the defendant drove to an unpopulated wooded area. He testified that on the way and while he was driving, he had the older child place his sex organ in her mouth. At the

secluded area, he took a blue rug and jar of lubricant from the car trunk and went into the wooded area with the children. He had the children remove their clothing and caused the older child to lie on the rug. He testified that he then removed his clothes and penetrated the older child. When he stopped she was bleeding. Her vagina was torn and required surgery for repair. He let the children dress. The older child was slower, so he took the younger child back toward the car first.

Along the way the younger child ran away from the trail. He chased her across a narrow, shallow creek. In his taped confession he said, "Well, when we got down to the creek, I don't really know why, but I just pushed her down into the creek and held her there. Well, she was kicking and trying to get out but I just held her there until she stopped kicking. Well, I figured she was dead and for some reason I didn't want to leave her in the creek and that is the reason I carried her out of the creek and layed her down." At trial the defendant testified that he accidentally fell on top of the fallen younger child who was still gasping for air as he pulled her to the creek bank and departed. The autopsy indicated that the cause of her death was drowning.

The defendant returned to the older child and took her towards a nearby section of the creek where he again had her place his sex organ in her mouth. Next, the defendant put the older child in the trunk of his car.

After driving some distance, a tire on the defendant's car lost air pressure. He left the older child in another wooded area near a service station and drove to his mother's nearby residence to repair the tire. The child found help at the service station. She told police that the man was driving a blue car and had had tire trouble. The defendant was found by police installing a tire on his car.

During the course of his testimony at trial the defendant admitted acts showing commission of each of the crimes (except the murder) for which he was convicted. (In his confession to police he admitted facts showing murder.) He testified that because the children did not protest, he did not believe at the time of the crimes that his acts were wrong. The court's expert witness, who had supervised a court-ordered psychiatric examination

of the defendant, testified that he had no reason to believe that the defendant did not know right from wrong.

The jury found the defendant guilty of kidnapping and murdering the younger child and of kidnapping with bodily injury and raping the older child. The prosecutor sought and obtained three death penalties. On appeal, the defendant urges forty-seven enumerations of error. In an effort to simplify the issues, we will deal first with matters favorable to the defendant.

1. The only evidence of bodily injury, to support the crime of the kidnapping with bodily injury of the older child, is the bodily injury which resulted from the rape of that child. Thus, the convictions for both kidnapping with bodily injury and forcible rape cannot be upheld. *State v. Estevez,* 232 Ga. 316 (1) (206 SE2d 475) (1974). Because the jury was instructed as to statutory rape as well as forcible rape but was not instructed to show by their verdict which offense was found, the latter conviction cannot be upheld. *Drake v. State,* 239 Ga. 232(1) (236 SE 2d 748) (1977); *Reed v. State,* 238 Ga. 457 (7) (233 SE2d 369) (1977).

The death penalty for rape therefore is vacated. Compare Coker v. Georgia, 433 U. S. 584 (97 SC 2861, 53 LE2d 982) (1977). On remand, the court below is directed to enter sentence for the crime of statutory rape, not less than one nor more than 20 years. Code Ann. § 26-2018.

As a consequence of the foregoing, there is evidence of bodily injury, not a part of the crime of statutory rape, to support the crime of kidnapping with bodily injury.

The evidence supports convictions for the murder and kidnapping of the younger child and kidnapping with bodily injury and statutory rape of the older girl. The state's erroneous identification of the creek where the murder occurred, called Nickajack Creek in the indictment, is not a fatal variance. *Dobbs v. State,* 235 Ga. 800 (221 SE2d 576) (1976). The state's attempted reliance upon sodomy as constituting the bodily injury associated with the kidnapping of the older child is not ground for retrial.

2. The defendant contends that the trial court erred in denying his motion to change venue. He contends that the media publicized the crimes, attempted to link the

defendant with similar crimes and publicized the results of his court-ordered psychiatric examination. He emphasizes that of forty-six jurors examined, thirty-nine had read of or discussed this case. After review of the transcript of the voir dire, we find that the trial court did not abuse its discretion in finding that the jury selection process revealed no degree of actual prejudice such as would render a fair trial impossible. *Street v. State,* 237 Ga. 307 (1) (227 SE2d 750)(1976); *Jarrel v. State,* 234 Ga. 410 (216 SE2d 258) (1975).

3. The defendant contends that the trial court erred in excusing a juror for cause. In *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976), we examined the tests set forth in Witherspoon v. Illinois, 391 U. S. 510, 522 (88 SC 1770, 20 LE2d 776) (1968), for determining whether a juror is "irrevocably committed, before trial has begun, to vote against the penalty of death. . ." Davis v. Georgia, 429 U. S. 122 (97 SC 399, 50 LE2d 339) (1976). If a juror makes it unmistakably clear that any of these accurately describe his position then he may be excused for cause: "[1] that he would vote against the death penalty regardless of what transpires at trial, or [2] that his attitude on the death penalty would prevent him from impartially passing on the issue of guilt, or [3] that he could not subordinate his personal feelings on the death penalty to his oath as a juror to obey the law of the state as charged by the trial court." *Dobbs v. State,* supra, at 431. Witherspoon v. Illinois, supra, 522-523, n. 21.

The juror whose excuse for cause is challenged was asked the general question "Are any of you conscientiously opposed to capital punishment?" When this juror responded "I am" the following occurred:

District Attorney: " . . . Have you decided and is your opinion so fixed that you would not consider the death sentence in this case regardless of the facts and circumstances?" Juror: "Yes, sir." District Attorney: "And have you already made up your mind that should you and your fellow jurors return a verdict of guilty that, in that event, that you would vote to impose life imprisonment, the alternative punishment, solely because of your opposition to the death penalty?" Juror: "I would." District Attorney: "We would challenge the juror, Your

Honor, for cause."

The Court (to defense counsel): "Do you want to examine him?" Defense counsel: "What basis generated this decision?" Juror: "Well, my religious beliefs." Defense counsel: "Your opinion is firm?" Juror: "Yes." Defense counsel: "You can understand that all of us may have some reservations about it?" Juror: "Yes, sir." Defense counsel: "and there might be a time, by reaching this decision, that you will be unable to participate in the trial of capital cases?" Juror: "Yes." Defense counsel: "I believe that is all the questions I have, sir."

The Court: "Let me ask you this: Do you represent to me that you would vote against the death penalty regardless of what transpires at the trial of the case?" Juror: "Yes sir, I just wouldn't want a part to send a man to the electric chair." The Court "Would your attitude as to the death penalty prevent you from impartially passing upon the issue of guilt." Juror: "Well, no." The Court: "Well, I will ask you this: Can you subordinate your personal feelings on the issue of the death penalty as a juror so as to obey the laws of the state as charged by the Trial Court?" Juror: "Yes, sir." The Court: "You could not?" Juror: "I reckon so." Defense counsel: "He said he could." Juror: "I think so, if I understood your question." The Court: "Could you subordinate your personal feelings, give up your personal feelings, on the issue of the death penalty, upon your oath as a juror, to uphold the laws of the state as charged to you by the Court?" Juror: "No sir; I wouldn't want to do that. I misunderstood you." The Court: "All right, sir. I will let him stand aside for cause. You can vacate the box, please, sir." We find it unmistakably clear that the juror was irrevocably committed to vote against the death penalty and that the trial court did not err in excusing him for cause.

4. The defendant contends that the trial court erred by refusing to suppress a confession by the defendant. The confession was made on the evening of the crimes while the defendant was in the custody of police officers and was taped on a dictaphone. In it the defendant acknowledged understanding the police officer's earlier explanation of his constitutional rights prior to any discussion of the crimes. Prior to making the recorded confession, he signed

a complete waiver. Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). He signed the transcription and initialed each page. The confession, which also contained a complete waiver, was read before the jury.

The defendant contends that a promise of police officers to tell the judge of his aid in locating the missing younger girl, a promise of a one man cell, and a promise to seek a psychiatric examination, were such inducements as to compel the defendant to be a witness against himself. After an evidentiary hearing the trial court found the defendant was twenty-two years old, sane at the time of the confession and likely to have been familiar with police procedures. The court found no evidence of mistreatment and that the interrogation was not intensive. The defendant was with interrogating police officers from about six-thirty in the evening, when the detectives found him at his mother's home, until about nine forty-five, when the taped confession was begun. In this time he was questioned at home, transported at his direction to a filling station where he had obtained a tire, transported at his direction to the scene of the crime, held while the scene was investigated and the body of the younger child was located, and transported to the police station. The trial court's finding that the defendant was not compelled to be a witness against himself is amply supported by the evidence. *Hurt v. State,* 239 Ga. 665 (2) (238 SE2d 542) (1977); Lego v. Twomey, 404 U. S. 477 (92 SC 619, 30 LE2d 618) (1972).

5. Defendant contends that under Code Ann. § 38-411 his confession was not voluntary because it was induced by "hope of benefit." Pursuant to Code Ann. § 38-412 a confession made on promise of "collateral benefit" is not inadmissible. We find that a hope of lighter punishment (induced by one other than the defendant) is usually the "hope of benefit" to which Code Ann. § 38-411 refers *(Turner v. State,* 203 Ga. 770 (1), (2) (48 SE2d 522) (1948); *King v. State,* 155 Ga. 707, 715 (118 SE 368) (1923)), and that agreeing to the defendant's request to put him in a cell by himself, to seek a psychiatric examination, and to tell the judge of his cooperation, did not constitute the kind of "hope of benefit" which is contemplated by Code Ann. § 38-411. The trial court did not err in overruling the

motion to suppress or in admitting the confession. *Person v. State,* 235 Ga. 814 (2) (221 SE2d 587) (1976); *Hurt v. State,* supra. See also *Mitchell v. State,* 239 Ga. 456 (238 SE2d 100) (1977).

6. The trial court ordered a psychiatric examination of the defendant "to evaluate the defendant's mental capacity at this time and at the time said act or acts were alleged to have been committed." The order was entered after two hearings on motion by the state for psychiatric evaluation at a time when the question of who had the burden of proof as to sanity was being contested. See *Grace v. Hopper,* 234 Ga. 669 (217 SE2d 267) (1975), discussing Mullaney v. Wilbur, 421 U. S. 684 (95 SC 1881, 44 LE2d 508) (1975). The defendant contends that the order was error because the trial court had no authority to order such an evaluation, the evaluation compelled him to be a witness and to give evidence against himself, and it denied him the assistance of counsel for his defense.

The trial court found that it had inherent authority to order the evaluation. *Lingo v. State,* 224 Ga. 333, 341 (162 SE2d 1) (1968). The order required the medical examiners to be witnesses for the court, so that the calling or cross examination of the examiners by either the defense or the prosecution would not constitute an offering of evidence that would affect the forfeiture of any rights. See *Thadd v. State,* 231 Ga. 623 (4) (203 SE2d 230) (1974); *Massey v. State,* 226 Ga. 703 (4) (177 SE2d 79) (1970); *Plummer v. State,* 229 Ga. 749 (194 SE2d 419) (1972). The medical examiners were directed not to disclose the content of statements by or conversations with the accused without prior order of the court. The court ordered the defendant transported to Central State Hospital for the evaluation.

Both statute and common law grant the trial judge inherent authority to satisfy himself that the accused has sufficient mental capacity to go to trial. *Ricks v. State,* 240 Ga. 853 (1978); *Lingo v. State,* supra; *Flanagan v. State,* 103 Ga. 619 (1) (30 SE 550) (1898); 21 AmJur2d 146, Criminal Law, § 64 (1965). See Drope v. Missouri, 420 U. S. 162 (95 SC 896, 43 LE2d 103) (1975); Pate v. Robinson, 383 U. S. 375 (86 SC 836, 15 LE2d 815) (1966). Common law, statute and rule have recognized the authority of a

trial judge in civil and in criminal cases to summon expert witnesses of his own choosing. Agnor's Ga. Evid. § 9-4 (1976); 2 Wigmore, Evidence, p. 644, § 563 (3d Ed.); McCormick on Evidence, p. 37, § 17 (1972); 1937 Handbook Nat. Conf. Comrs. on Unif. State Laws 339-348; Annot. 67 ALR2d 538, 540, § 2 (1959); Annot. 95 ALR2d 390 (1964). The trial court did not err as alleged by the defendant in appointing experts to testify as to the defendant's mental capacity at the time of the alleged crimes.

7. The defendant contends that the testimony of the court's expert witness should not have been allowed because it was based upon an examination of the defendant which violated his privilege against self-incrimination under the United States and the Georgia Constitutions. He argues that he was compelled to be a witness against himself as to his mental capacity in that he was compelled to make oral statements to the medical examiners which formed the basis for expert opinion testimony of his sanity at the time of the offense. The defendant does not contend that the testimony of the court's expert witness at trial revealed a confession, if any, made by him in the course of the medical examination or declarations, if any, implicating him in the crimes charged.

In considering the constitutionality of the use by medical experts of statements by the accused, we find no reason to distinguish confessions or implicating declarations from other statements made by the accused in the course of the medical examination. See State v. Myers, 220 S. C. 309 (67 SE2d 506, 32 ALR2d 430) (1951). Where the content of the defendant's oral statements is not revealed by the medical examiner, the important aspect of all the defendant's statements incriminating, exculpatory or collateral, is not their testimonial content, but is instead what those statements reveal to an expert about the mental capacity of the accused at the time of the offenses. Therefore, the statements made in the course of the examination are similar to the other evidence which is constitutionally derived from an accused. This evidence includes requiring an accused to speak for voice identification and placing him in a lineup (United States v. Wade, 388 U. S. 218 (87 SC 1926, 18 LE2d 1149) (1967)),

the taking of fingernail scrapings, the taking of a blood sample (Schmerber v. California, 384 U. S. 757 (86 SC 1826, 16 LE2d 908) (1966)), and even removal of a bullet from his body (*Creamer v. State,* 229 Ga. 511 (192 SE2d 350) (1972)). The psychiatric examination here is more akin to the voice identification in United States v. Wade, supra, than to the polygraph examination alluded to in Schmerber v. California, supra. We hold that statements made by an accused in the course of a court-ordered psychiatric examination may constitutionally form the basis of opinion testimony by properly appointed experts as to the mental capacity of the accused at the time of the offense without violating the right of the accused not to incriminate himself. State v. Myers, supra; United States v. Weiser, 428 F2d 932 (2d Cir. 1969), cert. den. 402 U. S. 949; Ramer v. United States, 411 F2d 30 (9th Cir. 1969). See State v. Evans, 104 Ariz. 434 (454 P2d 976) (1969); Annot. 32 ALR2d 434 at 444 (1951). This holding does not determine the admissibility at trial of confessions or other implicating declarations made by the accused to the court appointed medical examiner. See Miranda v. Arizona, supra.

8. The defendant contends that he had a constitutional right to have counsel present during the psychiatric examination. Assistance of counsel is not required for the taking of handwriting exemplars (Gilbert v. California, supra), or for the systemized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like. United States v. Wade, supra, 388 U. S. at 227. Those cases found that the accused has the opportunity for a meaningful confrontation through the ordinary process of cross examination and the presentation of the evidence of his own. "The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial." United States v. Wade, supra at 228. Cf. *Creamer v. State,* 229 Ga. 511, supra (on motion for rehearing, 1972). The constitution does not require that the assistance of counsel be allowed the defendant at a psychiatric examination, when the defendant's

incriminating statements to the examiners, if any, are used only in the formulation of their opinion as to his mental capacity at the time the offense was alleged to have occurred. Counsel's presence at such an examination would not be of significant value to insure that the proper conclusions as to mental capacity are reached by the psychiatrists and other persons of the medical profession who are involved. The medical examination of defendant's mental capacity at the time of the crimes was not a critical stage of the proceedings because there was a minimal risk that counsel's absence from the examination might derogate from the defendant's right to a fair trial. Therefore, we find that the defendant has not been denied assistance of counsel as alleged.

9. The defendant alleges that the trial court erred in allowing the state to lead the court-appointed expert. Even if the witness were led we do not find that the trial judge overstepped the bounds of his latitude in these circumstances in allowing such questioning of the court's witness. *Brown v. State,* 203 Ga. 218 (3) (46 SE2d 160) (1948); *Coker v. State,* 234 Ga. 555 (10) (216 SE2d 782) (1975), rev'd. on other grounds, 429 U. S. 815.

10. The defendant contends that the trial court erred in conditioning his cross examination of the court's psychiatrist as to the written opinion of one member of the Central State Hospital staff on which the witness' expert opinion was partially based. In the Central State Hospital record, the staff psychologist had checked "hallucinations" under the heading of "psychosis." The staff psychologist was not called as a witness. The defendant sought to cross examine the psychiatrist concerning the psychologist's findings. The prosecutor objected. The court conditionally overruled the objection. Although this ruling was favorable to the defendant, the condition apparently was not as the defendant did not pursue this line of cross examination. However, an accused cannot appeal the favorable overruling of a prosecution objection to the defendant's cross examination of a witness. See *Moore v. State,* 193 Ga. 877 (2) (20 SE2d 403) (1942); *Mullis v. State,* 197 Ga. 550 (3) (30 SE2d 99) (1944). See also *Wood v. Lovelady,* 176 Ga. 866 (3) (169 SE 93) (1933). No ruling having been invoked as to the correctness or harmfulness

of the court's alternative condition, that matter is not before us.

11. The defendant alleges error in the admission into evidence of both objects (children's clothing, rug, jar of lubricant) and photographs of those objects taken at the scene of the crimes, and in the admission of a mug shot taken of the defendant on the night of the crimes even though there was no issue as to identification. The probative value of both objects and pictures exceeded whatever slight unfairness may have arisen from their cumulative effect. See *Dix v. State,* 238 Ga. 209 (3) (232 SE2d 47) (1977). The picture of the defendant was identified as showing him as he appeared on the night of the crimes. His appearance at that time could be relevant to several issues other than his identity and we find no ground for reversal here.

12. The defendant contends that the trial court erred in entering judgment finding him guilty of malice murder because the charge to the jury authorized conviction of felony murder as well as malice murder. The defendant was charged with malice murder in count one of the indictment. The court charged the jury in part that if they found the defendant guilty of malice murder the form of the verdict would be, "We, the Jury find the defendant guilty on count one." He charged that if the jury found the defendant guilty of felony murder that their verdict would be, "We, the Jury, find the defendant guilty of the lesser offense of murder in the commission of a felony, on count one." He charged the form of verdict if the jury found the defendant not guilty on some or all counts and he charged, "Should you find him guilty on all counts, the form of your verdict would be: 'We, the Jury, find the defendant guilty.'" The verdict was, "We, the Jury, find the Defendant guilty as charged on all counts."[1] It is clear that the jury found the defendant guilty of malice murder (Code Ann. § 27-2301), and the court did not err in entering judgment thereon. *Reed v. State,* 239 Ga. 42 (4) (235 SE2d 524) (1977).

---

[1]The defendant was charged with both forcible and statutory rape in count three of the indictment.

13. The defendant contends that the trial court erred in charging the jury. He contends that three requested charges concerning the credibility of policemen, children, and the accused were improperly denied. The charge as given by the trial court adequately and fairly explained to the jury the principles of law regarding their determination of the credibility of witnesses. Denial of the requests for specific instruction as to the credibility of each of these three types of witnesses was not error. *Herrmann v. State,* 235 Ga. 400, 402 (220 SE2d 2) (1975).

The defendant's request for charge on voluntary manslaughter was properly denied because there was no evidence of provocation sufficient to excite a sudden, violent and irresistible passion in a reasonable person. *Bailey v. State,* 240 Ga. 112 (2) (239 SE2d 521) (1977); cf. *Malone v. State,* 238 Ga. 251, 252 (232 SE2d 907) (1977); see *Cromer v. State,* 238 Ga. 425 (1) (233 SE2d 158) (1977).

The defendant contends the trial court erred in failing to charge the jury to disregard any pre-trial publicity of which the jury may have been aware. The members of the jury were given instructions throughout the trial, before recessing to the jury room or for the night, and in voir dire, to disregard and avoid receiving publicity. The court instructed the jury to render its verdict by consideration of the evidence presented and the court's instructions. We find no error committed by the court in failing to further instruct the jury on pre-trial publicity as it was retiring to deliberate.

14. *Sentence Review.* We must determine whether the evidence supports the jury's finding of aggravating circumstance. Code Ann. § 27-2537 (c) (2). The conviction of forcible rape having been set aside, the sentence of death for that conviction is also vacated. The jury found that the defendant committed kidnapping with bodily harm while engaged in the commission of another capital felony, rape. Because the verdict was unclear as to the jury's finding of statutory or forcible rape, so is the finding of this aggravating circumstance unclear. Therefore, the sentence of death for kidnapping with bodily harm is vacated. See also *Collins v. State,* 239 Ga. 400 (236 SE2d 759) (1977).

The jury found that the defendant committed the

malice murder of the younger child while engaged in the commission of the capital felony of the kidnapping with bodily injury of the older child. The defendant contends this circumstance is not allowed to support the death penalty because the aggravating capital felony was inflicted upon a victim different from the victim who was murdered. We find no such limitation in Code Ann. § 27-2534.1 (b) (2). See *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975), cert. denied 429 U. S. 1054. See also *Peek v. State,* 239 Ga. 422, 431 (b) (237 SE2d 12) (1977). The evidence amply supports the jury's finding of aggravating circumstance as to murder.

We must also determine whether this death sentence for murder was imposed under the influence of passion, prejudice or any other arbitrary factor. Code Ann. § 27-2537 (c) (1). We note that in argument as to sentencing the prosecutor read dicta from *Eberhart v. State,* 47 Ga. 598, 609-610 (1822). This, of course, occurred prior to our recent criticism of this practice in *Hawes v. State,* 240 Ga. 327 (236 SE2d 672) (1977). This practice of inferring, by reading from *Eberhart,* supra, that one or all members of this court would approve the death penalty, in a case we have not reviewed, is improper and will not be approved. However, the facts of the case now before us are such that we find that the written words of a since deceased jurist could not have inflamed the jury more than the facts of the case themselves. We therefore decline to require a new trial. *Croom v. State,* 90 Ga. 430 (4) (17 SE 1003) (1892). We find no improper passion, prejudice or arbitrary factor which resulted from reading from *Eberhart v. State* in this case.

The defendant contends that the jury was prejudiced by the response of the trial court to the jury's inquiry, made during their deliberation following the court's sentencing instructions: ". . . as to the exact procedure for listing our reasons and/or verdict on the back of [the indictment] . . ." The jury's inquiry shows that they had reference to their findings as to aggravating circumstance. Code Ann. § 27-2534.1(c). The trial court told the jury that "in the event of a sentence of death" the wording must be in the exact language as submitted to the jury. He did not reinstruct them as to the form for a verdict

of life imprisonment. (The defendant had already been found guilty and the form of verdict for life sentence had been charged.) The trial judge's response to the jury's inquiry was responsive to that inquiry, did not influence the jury's decision, which it appears had already been reached, and was not unfairly prejudicial to defendant.

The defendant contends that the court erred in failing to charge without request upon specific mitigating circumstances. There was no request to charge as to any specific mitigating circumstance. The court instructed the jury to consider "any mitigating circumstances" and properly defined those terms. He also instructed that mercy may be recommended whether aggravating circumstances are found or not and that a recommendation of mercy required no reason. *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977); *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977). We find that neither passion, prejudice nor arbitrary factor influenced the jury's decision to impose the death penalty.

We must also determine whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Code Ann. § 27-2537 (c) (3). In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which death or life sentences were imposed, and we find that the similar cases listed in the appendix support the affirmance of the death penalty in this case.

The jury would have been authorized to find from the uncontradicted evidence that the crimes of rape and kidnapping were premeditated. The evidence shows that on the day prior to the offenses the defendant observed little girls at school. The next day he prepared himself with equipment including rope, rug and lubricant, watched his victims through binoculars, and stalked them as they walked along a wooded path from school toward home. In few murder cases has the criminal planning and preparation been as complete and meticulous. The defendant's claim that he did not believe at the time of the crimes that his acts were wrong is negated by his tying the victims and his threat to use a gun to scare the girls into submission and to keep them quiet.

Virgil Delano Presnell, Jr.'s, sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment convicting the defendant of kidnapping, murder and kidnapping with bodily injury and imposing the sentence of death for murder affirmed. Judgment convicting the defendant of forcible rape and imposing the sentences of death for forcible rape and kidnapping with bodily injury vacated. Remanded with direction. All the Justices concur, except Hall, J., who concurs specially.*

ARGUED NOVEMBER 17, 1977 — DECIDED MARCH 7, 1978 — REHEARING DENIED MARCH 28, 1978.

*Grubbs & Platt, Adele W. Platt, William Holley,* for appellant.

*Thomas J. Charron, District Attorney, Joseph L. Chambers, Assistant District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Isaacs v. State,* 237 Ga. 105 (226 SE2d 922) (1976); *Dungee v. State,* 237 Ga. 218 (227 SE2d 746) (1976); *Blake v. State,* 239 Ga. 292 (236 SE2d 637) (1977); *Moore v. State,* 240 Ga. 807 (1978).

HALL, Justice, concurring specially.

I concur in the judgment, but I have grave doubts as to the rulings in Divisions 6, 7 and 8. Whether the court may order a psychiatric examination of the accused over his objection concerning his mental capacity at the time of the offense[1] is a difficult Fifth Amendment issue which in my

---

[1] It is important to distinguish between mental capac-

opinion cannot be resolved by analogizing such an examination to taking fingernail scrapings, blood samples, and voice exemplars.

None of the procedures approved by the United States Supreme Court over Fifth Amendment objections involved an examination of the accused's thought processes. The closest that court has gotten to expressing a view on the issue in this case was the dicta in Schmerber v. California, 384 U. S. 757, 764 (1966) dealing with polygraph examinations: "To *compel* a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment." (Emphasis supplied.)

To the extent we can reason by analogy to existing case law from the nation's highest court, the reasoning supports appellant. I cannot agree with the majority that a psychiatric examination is more analogous to voice identification than to polygraph examinations. Voice identification reveals nothing of the accused's thought processes, and none of his memories. Moreover, there is nothing private about the sound of a man's voice. But a psychiatric examination requires the accused to answer questions about his thoughts at the time of the event — he must reveal at least his memories of what occurred in his mind. This type of interrogation is far more analogous to a polygraph examination than it is to voice identification.

But this type of reasoning is not adequate to the task at hand. Rather we must look at the policies underlying the Fifth Amendment and determine if they are infringed by compelling the accused to submit to a psychiatric examination. The key policy is "to respect the inviolability of the human personality." 384 U. S. at 762. To force an individual to reveal his thoughts at the time of the offense clearly intrudes on the "inviolability of the human personality."

Turning to the clearest test for the application of the

---

ity at the time of the offense from capacity at the time of trial. Only the former may be determinative of guilt or innocence.

privilege, i.e. whether the evidence is testimonial or communicative, I again conclude that on balance the arguments favor appellant. What was compelled from appellant were (presumably) statements of his thoughts at the time of the crime. These statements were somewhat like a confession, which is a statement regarding his actions at that time. While it is true that the statements were not used directly in court, they were used indirectly as the basis of testimony which tended to negate the defense of insanity. The indirect use of unconstitutionally compelled testimonial evidence is barred as clearly as the direct use of the statements. But, like reasoning by analogy, and reasoning from underlying policies, the application of this test is also not dispositive. 384 U. S. at 756.

Case law from lower courts, primarily the United States Courts of Appeals, is split on whether the accused can be compelled to submit to a psychiatric examination. Some cases approve only an order which requires the accused to either submit or be barred from presenting his own experts on this issue. See, e.g., Karstetter v. Cardwell, 526 F2d 1144 (9th Cir., 1975).[2] Other cases approve of unconditional orders to submit to examinations where the defense of insanity is raised by the defendant. See, e.g., United States v. Cohen, 530 F2d 43, 47-48 (5th Cir., 1976). But at least one circuit has disapproved of compulsory examinations, and would bar testimony based on them even if limited to the issue of sanity at the time of the offense. United States v. Alvarez, 519 F2d 1036, 1042 (3rd Cir., 1975).

In light of the presumption of sanity, and the reluctance of juries to acquit by reason of insanity, I can see no compelling need of the state to have the accused examined as to his sanity at the time of the offense where he does not

_____

[2]This rule prevents the accused from using his privilege to gain an unfair advantage over the prosecution. If the experts for the accused were the only ones to examine him, the prosecution could not present credible expert testimony. Limiting expert testimony to defense witnesses would deny the prosecution a fair chance to prove the culpability of the accused.

intend to use expert testimony of his own on this issue. If the accused makes a timely objection, I conclude that he has a Fifth Amendment right to refuse to submit to a psychiatric examination.

In this case the court concluded that appellant wanted a psychiatric examination, and was planning to seek one conducted by his own experts. Under these circumstances it was permissible to order appellant to submit to an examination by the court's expert as well. In order to exclude the testimony of that expert at trial, appellant would have had to indicate his intention not to use any expert testimony on this issue. This he did not do; therefore I concur in the judgment.

## On Motion for Rehearing.

On motion for rehearing the defendant urges, among other things, that he was not on notice that evidence as to the older child's injuries which resulted from her being raped would provide the evidence of her bodily injury to convict him of her kidnapping with bodily injury. He was on notice, however, that he was charged with forcible rape as well as kidnapping with bodily injury of the older child.

*Motion for rehearing denied.*